---

**Case No.: 3:18−cv−01570−HZ**

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON

---

UNITED STATES TRUSTEE

v.

VINCENT HOWARD
HOWARD LAW, P.C.

*Movants-Appellants*

---

ON APPEAL FROM THE UNITED STATE BANKRUPTCY COURT
FOR THE DISTRICT OF OREGON (Hercher, D.)
Case Nos. 14-35071-dwh7, 15-62393-tmr7, and 15-63116-tmr7
Adversary Nos. 16-3013-dwh, 16-6061-dwh, and 16-6062-dwh

---

### APPELLANTS' OPENING BRIEF
### AND JOINT APPENDIX
Request for Oral Argument

Jeffrey Katz, CA Bar No. 137246
(*Admitted Pro Hac Vice*)
Jeffrey.katz@kesherlawgroup.com
Kesher Law Group, P.C.
1919 N. Heliotrope Dr.
Santa Ana, CA 92706
Telephone: (714) 296-8309

Nicholas J. Henderson, OSB#074027
nhenderson@portlaw.com
Motschenbacher & Blattner, LLP
117 SW Taylor St., Suite 200
Portland, OR 97204
Telephone: (503) 417-0508
Facsimile: (503) 417-0528

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 and Ninth Circuit LAR 26.1, Appellant Howard Law, P.C., makes the following disclosure:

I. For non-governmental corporate parties please list all parent corporations:

     None.

II. For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

     None.

III. If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

     None.

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

I.  STATEMENT OF JURISDICTION ....................................................3
.
II.  STATEMENT OF THE ISSUES .......................................................4

III.  STANDARD OF REVIEW ..............................................................5

IV. STATEMENT OF THE CASE .........................................................6

    A. The Nature of the Case……………………………….…………....6

    B. The Course of Proceedings……………………………….…………6

        a.  Pre-Litigation Proceedings……………………….……………6

        b.  Post-Lawsuit Initiation Proceedings…………………….……7

        c.  The Bankruptcy Court's Decision on the Three Cases…………9

    C. The Disposition Below on the EAJA Motion…………………….……11

V.     STATEMENT OF THE FACTS……………………………..………11

    A. The Appellants…………………………………………………....…..11

    B. The UST's First Unreasonable Exercise of Government

      Authority –*In re Clements*………………………………….……...12

VI.    ARGUMENT………………………………………………..…14

    A. Legal Authorities………………………………………………….…14

        1. "Substantial Justification" Defined……………..…..…15

    2.  Oregon District Court Decision – Weak
       Evidence Is Insufficient……………………………..…16

B.  In *Stites,* The Bankruptcy Court Erroneously Found
    "Substantial Justification" Despite No Evidence to Support
    the UST's Position……………………………………….…………...18

    1.  The Bankruptcy Court Erroneously Read into
       the Agreement A Fact Which Did Not Exist; A Fact
       Which the Court Itself Rejected in Its Case Opinion….19

    2.  The Bankruptcy Court Erroneously Elevated a Theory
       (With No Factual Support) to a Justified Position…….21

C.  In *Arthur,* The Bankruptcy Court Erroneously Adopts a
    "Confused" and "Complex" Standard Dispensing with
    a Reasonable Basis in Facts……………………………………….…24

D.  In *Roberts,* the UST Should Have Been Aware of Facts
    Which Would Undermine Its Suspicion that Howard Was
    Individually Involved……………………………………..………29

E.  The Bankruptcy Court Erred Basing Its Ruling on Isolated
    Fragments and Not The Totality of the Circumstances……………..……30

F.  The Bankruptcy Court Erred by Failing to Award EAJA
    Fees for the Positions It Found to Be Substantially Unjustified…….….…33

CONCLUSION ....................................................................................36

CERTIFICATE OF COMPLIANCE………………………..………….....38

APPENDIX……………………………………………………….…..…...39

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Fin. Servs. Ass'n v. FTC*,
767 F.2d 957 (D.C. Cir. 1985) ........................................................19

*Abela v. Gustafson*,
888 F.2d 1258 (9th Cir.1989) ..........................................................2

*Al-Harbi v. INS*,
284 F.3d 1080 (9th Cir.2002) ........................................................15

*Barry v. Bowen*,
825 F.2d 1324 (9th Cir.1987) ................................................…....31

*Caesar v. Mountanos*,
542 F.2d 1064 (9th Cir.1976) ................................................…....28

*Commissioner* v. *Jean*,
496 U.S. 154 (1990)… ...............................................................…14

*Corbin v. Apfel*,
149 F.3d 1051 (9th Cir.1998) ................................................….30

*Cooter v. Gell v. Hartmarx Corp.*,
496 U.S. 384 (1990)… ...............................................................36

*Huffman v. Commissioner*,
987 F.2d 1139 (9th Cir.1992)… .....................................................5

*Hughes v. United States*,
953 F.2d 531 (9th Cir.1992)… ......................................................5

*Kali v. Bowen*,
854 F.2d 329 (9th Cir.1988)…. ..............................................6, 15

*Loomis v. United States*,
74 Fed. Cl. 350 (2006)…. .........................................................33

*Moreno v. City of*
*Sacramento*, 534 F.3d 1106 (9th Cir.2008)…..............................................29

*Pierce v. Underwood*
487 U.S. 552 (1988)… .......................................................5, 15, 27, 30

*Precision Pine & Timber v. The United States,*
81 Fed. Cl. 733 (2008)… ......................................................…33

*Ruiz v. I.N.S.,*
813 F.2d 283 (9th Cir.1987)… ...........................................................28-29

*Thangaraja v. Gonzales*,
428 F.3d 870 (9th Cir.2005) ...................................................................15

*Townsend v. Holman Consulting Corp.*,
929 F.2d 1358 (9th Cir.1990)… ...........................................................36

*United States v. $16,500 in US Currency*
48 F. Supp. 2d 1268 (D. Or. 1999) ...................................  1, 2, 16-18, 30

*United States v. Rubin*,
97 F.3d 373, 375 (9th Cir.1996) ......................................................  1, 22

## Statutes and Rules

11 U.S.C. § 329 ..................................................……………........6, 30

11 U.S.C. § 526  ..................................................................…....6, 29, 30

15 U.S.C. § 1643(a)(1)(B) ........................................................... 48

26 U.S.C. § 7430 ...........................................................................5

28 U.S.C. § 158… ...........................................................................4

28 U.S.C. § 2412(d)(1)(A)… ...............................................................14

ABA Commission on Ethic Report (2012)….........................................20

ABA Model Rule 3.1 ...................................................….26

Fed. R. Bankr.P. 8013(a) ......................................................5

Fed. R. Civ.P. 11…. .......................................................35

Oregon Rules of Professional Conduct 3.1...........................................26

Oregon Revised Statute §58.129…. .....................................................34

Oregon Revised Statute §60.704… .......................................................35

## Other Authorities

Douglas Richmond, *Professional Responsibility in Litigation* (ABA 2011)… ......................................................26

H.Rep. No. 96-1418 (1980) ..........................................……35

H.R.Rep. No. 120, 99th Cong., 1st Sess. 9 ........................................15

## INTRODUCTION

This appeal arises from the Bankruptcy Court's wrongful denial of Appellants' (prevailing parties) Motion for Attorney's Fees Pursuant to Equal Access to Justice Act ("Motion").  The Motion must be granted unless the United States Trustee ("UST") can meet its burden of demonstrating that its positions were substantially justified.  They were not.

The Bankruptcy Court erred by elevating the UST's factually unsupported suspicions, hypotheses, beliefs and wishful theories to the status of "substantially justified" positions.  However, the Supreme Court has required that Government's position be substantially justified in both *facts* —not theories—and law.  At the conclusion of trial, the Bankruptcy Court ruled that the UST failed to present *any* evidence on the seminal issues necessary to sustain liability against Appellants on the matters in which Appellants prevailed.

This Court has ruled that weak evidence—let alone "no evidence"—will not carry the day for the Government's burden. *United States v. $16,500 in US Currency*, 48 F.Supp. 2d 1268, 1275 (D. Or. 1999).  Further, the Ninth Circuit has stated that an award of EAJA fee is warranted where the Government has a "suspicion to justify investigating" but the investigation "reveal[s] that the suspicions were wrong; yet, the … Government persist[s] in bring suit." *United States v. Rubin*, 97 F.3d 373, 375 (9th Cir.1996).

Further, the Government's position cannot be adopted in a vacuum ignoring the evidence which undermines its position. The Bankruptcy Court erred by failing to account for the "totality of the circumstances." *Abela v. Gustafson,* 888 F.2d 1258, 1264 (9th Cir.1989); *Loomis v. United States*, 74 Fed. Cl. 350 (2006) (EAJA should focus on determining, from totality of circumstances, whether government acted reasonably in causing litigation.) Prior to the UST's initiating the first of three actions against the Appellants, the UST convened *eight* Rule 2004 examinations of the pivotal witnesses—many of whom were re-examined, by deposition, during the lawsuit and then called to testify at trial. Appellants and their representatives and agents made themselves consistently available to the UST and consistently maintained its position dating back to the UST's first encounter with Appellants in 2012.

Yet, in these three consolidated actions with cumulative prayers of $17,000, the UST took a hardline position on settlement (refusing to even engage in discussions for 11 months and then reluctantly doing so upon order of the Bankruptcy Court) and compelled the Appellants, with limited resources, to litigate this matter for 15 months and to present their case at trial at a cost in excess of $100,000. This Court has ruled that "substantial justification" does not exists where "the amount of money [sought] was not large in relation to the cost to the [defendants] to defend the case." *US Currency, supra*, 48 F.Supp.2d at 1275.

Finally, the Bankruptcy Court did make specific findings that certain significant claims made by the UST were not substantially justified.  The Bankruptcy Court erred by failed to acknowledge the one of these claims— Appellants representation that it could provide legal services to Oregon residents-- constituted the core of all three cases.  The UST so alleged in each of the three Adversary Complaints in a section entitled "Pattern and Continuation of Conduct by [Appellants] – The Bankruptcy Case of Peggy Clements."  The UST adopted an unjustified position (as determined by the Bankruptcy Court) in 2012.  Because the Appellants chose not to engage in a long-term and expensive battle with the UST, the Government believed itself entitled to punish the Appellants, again, armed with the same groundless ammunition.

Even if the this "unjustified position" did not constitute the core of the proceedings, the Bankruptcy Court erred by not partially granting Appellants' motion regarding the fees it expended to defend the Government's position and undo the damage suffered 2012.

## I.    <u>STATEMENT OF JURISDICTION</u>

This is an appeal from a final order entered by the United States Bankruptcy Court for the District of Oregon (the "Bankruptcy Court") on August 9, 2018, denying Appellants' Motions for Attorneys' Fees and Costs Pursuant to the Equal

Access to Justice Act entered (the "Order") (ER 001-019)[1]. The Appellants filed a

timely notice of appeal. (ER 443-446). Accordingly, pursuant to 28 U.S.C. § 158,

this Court has jurisdiction to hear this appeal.

## II.    STATEMENT OF ISSUES

A) Did the Bankruptcy Court err when it entered its order denying Appellants'

post-trial Motions for Attorneys' Fees and Costs Pursuant to Equal Access to

Justice Act ("Motion for Attorneys' Fees")?

B) Did the Bankruptcy Court err when it entered its order denying Howard's

Motion for Attorneys' Fees finding that that the position of United States

Trustee ("UST") against Howard was substantially justified despite the

Bankruptcy Court's Opinion that the UST presented no facts at trial to support

Howard's personal liability?

C) Did the Bankruptcy Court err when it entered its order denying Howard's

Motion for Attorneys' Fees in the *Stites* and *Roberts* matters despite its finding

that the UST's position on some of its claims were not substantially justified?

D) Did the Bankruptcy Court err when it entered its order denying Appellants'

Motion for Attorneys' Fees in the *Arthur* matter finding that the UST's

position was substantially justified based upon the facts being complex and

---

[1] All "ER" references are to the concurrently filed Excerpts of Record and the page
references are the bates number on the right-hand bottom corner of documents.

confusing despite the fact that those facts did not support liability against

Appellants?  Did the Bankruptcy Court err when it found that the facts were

complex and confusing when there were no facts demonstrating any confusion

or misunderstanding suffered by any of the debtors, witnesses, defendants, or

the Bankruptcy Court, itself?

E) Did the Bankruptcy Court err when it found that UST's position was justified

merely on the basis that it was reasonable for the UST to believe that evidence

would materialize at trial although, ultimately, the Bankruptcy Court found the

UST offered no such evidence at trial?

## III   <u>STANDARD OF REVIEW</u>

A district court reviews a bankruptcy court's conclusions of law *de novo. See*

Fed. R. Bankr.P. 8013(a); *Huffman v. Commissioner,* 978 F.2d 1139, 1143 (9th

Cir.1992) (citing *Pierce v. Underwood,* 487 U.S. 552, 571, 108 S.Ct. 2541, 101

L.Ed.2d 490 (1988)). Evidentiary rulings, by contrast, are reviewed for abuse of

discretion. *Hughes v. United States,* 953 F.2d 531, 539 (9th Cir.1992). Similarly,

the district court reviews a bankruptcy court's determination of attorney's fees

awards under 26 U.S.C. § 7430 for abuse of discretion. *Huffman,* 978 F.2d at 1143.

A court abuses its discretion when its decision is based on an erroneous conclusion of law or when the record lacks evidence that could rationally support its decision. *Kali v. Bowen,* 854 F.2d 329, 331 (9th Cir.1988).

## IV    STATEMENT OF THE CASE

### A.  The Nature of the Case

These consolidated adversary proceedings arise following the bankruptcy filing of three debtors:  Stites, Arthur and Robert.  The UST asserted Sections 526 and 329 (Title 11) claims against Appellants for alleged misrepresentations and failure to provide services.

### B. The Course of Proceedings

#### a.  Pre-Litigation Proceedings

Prior to the UST's filing its first Complaint against Appellants (on January 29, 2016), in addition to investigation unknown to Appellants, the UST performed *eight* examinations under oath pursuant to Fed. R. Bankr. 2004, of the following critical witnesses:

1. Cheryl Stites (the debtor) – examination n April 10, 2015;

2. Vincent Howard (the defendant) – examination on September 1, 2015;

3.  Erik Graeff (former *of counsel* member of Howard Law, P.C. and principal in his own solo practice, The Law Offices of Erik Graeff) – examination performed on January 30, 2015;

4.  Brandon Rennie (former *of counsel* member of Howard Law, P.C. and principal in his own solo practice) – examination performed on April 21, 2015;

5.  James Loy (former *of counsel* member of Howard Law, P.C.) – examination performed on September 29, 2015;

6.  David Walker (the C.F.O. for Morgan Drexen – the company that provided support services to Howard Law) – examination performed on May 14, 2015;

7.  Deborah Ketsdever (controller for Morgan Drexen) – examination performed on May 14, 2015;

8.  Loretta Acosta (manager of trust services for Howard Law) – examination performed on May 14, 2015.

**b. Post-Lawsuit Initiation Proceedings**

On January 29, 2016, Plaintiff Acting United States Trustee for Region 18, Gail Brehm Geiger (the "Plaintiff" or "UST"), commenced its action against Appellants filed in the case of *In re Cheryl Kae Stites*, Case No. 14-35071-rld7, Adversary No. 16-3013-rld ("*Stites*").

In *Stites,* Appellants represented the debtor, only, in connection with creditor claims prior to the bankruptcy.  The UST asserted that Appellants were not authorized to represent Oregon residents and that services were not provided as represented in the engagement agreement.  The UST prayed for civil penalties in the amount ***up to*** $5,000 total and injunctive relief.

On June 10, 2016, the UST filed nearly identical claims in the cases of *In re Kathleen Arthur*, Case No. 15-62393-tmr7, Adversary No. 16-6061-rld ("*Arthur*"); and *In re Mary Ann Michiko Roberts*, Case No. 15-63116-tmr7, Adversary No. 16-6062-rld ("*Roberts*") (collectively the "Adversary Proceedings").

In *Arthur,* the debtor retained The Law Offices of Erik Graeff.  (Under Oregon law, an attorney may have his own practice but also be *of counsel* to another law firm.)  The UST attempted to hold Appellants responsible for the alleged conduct of a separate firm because Erik Graeff also had a relationship with Howard Law.   The debtor had never heard of Howard Law or Vincent Howard and believed she was engaging The Law Offices of Erik Graeff.  The UST prayed for civil penalties in the amount ***up to*** $5,000 total and injunctive relief.

In *Roberts,* the debtor retained The Law Offices of Erik Graeff.  Six months after the engagement. Graeff asked Howard to have his law firm take over representation of the debtor in her bankruptcy petition filing.  Howard Law had just lost its remaining Oregon-licensed *of counsel* who practiced bankruptcy; so, it

8

looked for an Oregon attorney to refer the case.  Heather Brann accept the referral.

Howard Law's paralegals assisted Ms. Brann with the preparation of the petition.

Howard Law was held liable for certain inaccurate statement contained in the

petition filed by Ms. Brann.  Mr. Howard had no involvement with preparation of

the petition.

In the *Roberts*, the UST prayed for refund of all fees received by Howard

Law from Roberts within one year of the petition date, civil penalties in the amount

*up to* $5,000 total and injunctive relief.

At the request of the UST, the Adversary Proceedings were consolidated.

The cases were tried on April 3 through 5, 2017.  In its case-in-chief, Plaintiff

called the following percipient witnesses[2] to testify in court:  Stites, Howard,

Graeff; and Loy.

### c.  The Bankruptcy Court's Decision on the Three Cases

On March 9, 2018, the Bankruptcy Court entered judgment against plaintiff

and in favor of Vincent Howard on all three adversary proceedings.  The

Bankruptcy Court entered judgment in favor Howard Law in *Stites* and *Arthur*.

Concurrent with the Judgment, the Bankruptcy Court issued a written opinion

("Opinion;" ER 245-291.)

---

[2] The UST also called two UST employees to authenticate and summarize documents.

In *Stites,* "Howard Law's statement that it, as a firm, could represent her was true.... Graeff was then an of-counsel member of Howard Law." (ER 273.)

In *Arthur,* the Bankruptcy Court found: Arthur was a client of the Law Offices of Erik Graeff (ER 273) and "because there is *no evidence* that any client actually had [a] misimpression, I cannot conclude that Graeff exercised apparent authority for Howard Law when he serviced his own separate clients." (ER 267; emphasis added.)

In *Roberts,* the Bankruptcy Court found that Howard Law did not misrepresent its services. (ER 276.) The staff advised Roberts that it no longer had an Oregon-licensed attorney and it would have to find one for her. Ultimately, the case was referred to an outside attorney—Heather Brann. The petition filed by Brann contained a few inaccurate statements. However, because the Howard Law paralegals aided Brann in the preparation of the petition, the court required Howard Law to disgorge fees[3] and it assessed a $5,000 penalty against Howard Law.

However, as to Howard, individually, the Bankruptcy Court found "[t]here is *no evidence* of [Howard's] personal involvement. (ER 283.)

---

[3] The Opinion provided for the disgorgement of $1,983 in fees despite the fact that the court had already entered an order reflecting that Howard Law transferred $1,689 to Brann which was disgorged pursuant to the 2015 Stipulation. (ER 237.)

No party appealed the Bankruptcy Court's Judgment.

On April 13, 2018, Appellants filed their Motion for Attorneys' Fees.

### C.  The Disposition Below on the EAJA Motion

On August 1, 2018, the Bankruptcy Court issued its ruling from the bench

denying Appellants' Motion.

The order thereon was entered on August 9, 2018.

Appellants filed their Notice of Appeal on August 23, 2018.

## V.    STATEMENT OF THE FACTS

### A. The Appellants.

Vincent Howard is a California-licensed lawyer.  Howard is the sole

shareholder of Howard Law, P.C.  (ER 247.)

In addition to attorney associates, the law firm's members included attorneys

who were *of counsel*.  During the relevant time period, Howard Law's members

included three Oregon-licensed *of counsel:*  James Loy, Erik Graeff, and Brandon

Rennie.  These were not full-time associates of Howard Law; in fact, each of them

also had their own solo practice with their own clients.  But, the *of counsel* enjoyed

an ongoing, close professional relationship with Howard and Howard Law

sufficient to be deemed members of Howard Law.  (ER 248.)

Howard Law hired Morgan Drexen, an outside company, to provide paralegal, accounting, and administrative support to the law firm's clients seeking bankruptcy and other debt-relief services.  (ER 247.)

## B.  The UST's First Unreasonable Exercise of Government Authority – *In re Clements*.

Oregon-resident Peggy Clements retained Howard Law to prepare and file a bankruptcy petition for a fee of $2,000.  (ER 226-228.)  Howard Law assigned Erik Graeff, in his *of counsel* capacity, to handle the preparation (including oversight of the support staff) and filing of the petition.

The UST threatened action against Howard Law insisting that Howard Law could not represent Clements because "Howard Law is not, and was not, licensed to practice law in the state of Oregon and is not, and was not, admitted to practice law in the federal courts in the District of Oregon."  (ER 219.) The UST understood that Graeff was involved; however, the UST did not acknowledge Graeff's *of counsel* membership with Howard Law.  It only recognized his ownership of his separate solo practice.  (ER 220.)  The UST was willing to entertain Howard Law's representing Oregon debtors if (1) the person responsible for providing the representation is an active member, in good standing, of the Oregon State Bar and the bar of the U.S. Bankruptcy Court for the District of Oregon; and (2) if Howard Law "properly files a *pro hac vice* application in accordance with **all** applicable

U.S. District of Oregon's Rules and procedures." (ER 221.) The UST made this proposal despite the fact that (1) Graeff was an Oregon-licensed attorney and a member of Howard Law; (2) the *pro hac vice* rules apply to attorneys – not law firm; and (3) demanding Howard Law comply with *pro hac vice* rules would limit the law firm to the number of clients it could represent.

The UST was not moved by Howard Law's explanation and continued to threaten governmental action against Appellants. To avoid the extensive cost of litigating with the UST, Appellants ultimately executed the Stipulation and withdrew from representing Clements or any other Oregon resident. (ER 223.)

Four years later, the UST brought suit in the *Stites* alleging that Howard Law misrepresented to Stites, in 2007, that the law firm could represent an Oregon resident. This time, the UST was unwilling to entertain a settlement. (ER 365-366.) Appellants were compelled to expend over $100,000 to represent the very same position it asserted to the UST in 2012. (ER 357-382.)

The Bankruptcy Court dispensed with the UST's position quickly in its March 9, 2017 Opinion: "Howard Law's statement that it, as a firm, could represent her was true. Graeff, an Oregon-licensed attorney, was assigned to handle her representation. Graeff was then an *of-counsel* member of Howard Law." (ER 272-273.)

Further, the Bankruptcy Court found that the UST's position with without justification.  (ER 011).  The Bankruptcy Court stated that "At least by time of trial it should have been clear that James Loy or Erik Graeff as Oregon licensed *of counsel* members of Howard Law could provide services on the firm's behalf to Ms. Stites."  (Id.)

The specific purpose of the EAJA is "to eliminate for the average person the financial disincentive to challenge unreasonable governmental actions." *Commissioner* v. *Jean*, 496 U.S. 154,163 (1990).  The Appellants have sought to recover a portion of the more than $100,000 it expended defending against the Government's unjustified positions.


## VI.  <u>ARGUMENT</u>

### A. Legal Authorities

The Equal Access to Justice Act (EAJA) makes it *mandatory* for a court to award "fees and other expenses" to private parties who prevail in litigation against the United States if, among other conditions, the position of the United States was not "substantially justified."  28 U.S.C. § 2412(d)(1)(A).[4]  Only the application of the "substantially justified" condition is at issue in this case.

---

[4] The statute is set forth completely in the Appendix at APP 001-005.

### 1. "Substantial Justification" Defined

"[S]ubstantially justified," means that the position must have a "reasonable basis in law ***and*** fact." *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)(emphasis added).

"'[S]ubstantial justification means more than merely reasonable." *Kali v. Bowen*, supra, 854 F.2d at, 331. ("Because in 1980 Congress rejected a standard of "reasonably justified" in favor of "substantially justified," the test must be more than mere reasonableness.  H.R.Rep. No. 120, 99th Cong., 1st Sess. 9, reprinted in 1985 U.S.Code Cong. & Admin.News 132, 138 (footnote omitted).")

The statute's use of the adjective "substantial" was designed to convey "'justified in substance or in the main' -- that is, justified to a degree that could satisfy a reasonable person."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)." *Al-Harbi v. INS*, 284 F.3d 1080, 1084 (9th Cir. 2002) (order).

Although a loss by the Government does not necessarily indicate an award of attorney's fees, the Ninth Circuit has held that the court's holding that the government's case "was unsupported by substantial evidence" is "a strong indication" that the "position of the United States" in this matter was not substantially justified." *Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005)    "Indeed, it will be only a 'decidedly unusual case in which there is substantial justification under the EAJA even though the agency's decision was

reversed as lacking in reasonable, substantial and probative evidence in the record.'"   Id., quoting *Al-Harbi v. INS*, 284 F.3d 1080, 1085 (9th Cir. 2002)

The statute's use of the adjective "substantial" was designed to convey "'justified in substance or in the main' -- that is, justified to a degree that could satisfy a reasonable person."

### 2.   Oregon District Court Decision – Weak Evidence Is Insufficient

This Court's decision in *United States v. $16,500 in US Currency*, provides appropriate guidelines for evaluating the UST's position.  In *US Currency*, task force agents at the Portland International Airport seized $16,500 from the claimant. The agents observed that the claimant seemed to be nervous.  The agents located money inside the claimant's coat pocket and hidden in the small of his back.  A dog trained in narcotics detection had a positive "alert" at the site of the hidden currency. The money was seized.

Claimant's counsel contacted the DEA and described the nature of the intended transaction in Los Angeles and the source of the funds seized.  Claimant provided an affidavit that stated that he had had no involvement in any drug-related activity, and that the money was not to be used in any drug-related transaction.

The United States filed a complaint *in rem* for forfeiture of the $16,500.  The United States asked the court to find that there was probable cause to believe that this money was used or intended to be used to facilitate a drug transaction.  The

facts raising the DEA's suspicion were provided to the Court: the unusual method of transporting the funds, use of fictitious names, false social security card, claimants failure to file the proper forms,  and the positive canine alert.  The Government did not reference the contact with claimant's counsel, the explanation and the affidavit.

The court issued probable cause.  A trial ensued.  The jury found that the claimant had carried their burden to refute probable cause to believe that the $16,500 was used or intended to be used for illegal drugs.

The claimant sought to recover his attorney's fees pursuant to EAJA.  He argued a number of grounds:  the Government did not present the entire story at the probable cause hearing; no new evidence was uncovered by the Government for trial; the evidence used by claimant to defend the action was known by the Government before it instituted the action.

The Government conceded that a finding of reasonable cause does not automatically translate into a denial of an EAJA award.  However, the Government contended that there was substantial justification based upon the facts set forth in the agent's affidavit.

This Court granted the EAJA claims despite the Government's rendition of facts supporting its suspicion.  The Court focused on a number of facts to justify the award:

- The government's evidence was weak;

- the amount of money seized was not large in relation to the cost to the claimants to defend the case;

- the claimant presented consistent evidence throughout the pretrial proceedings, and,

- After the seizure, which was based upon the legal but asserted suspicious behavior of claimant and the alert of the drug dog, the government found no further evidence connecting claimant with drugs. *US Currency, supra,* 48 F. Supp. 2d at 1275.

The Bankruptcy Court erred by not applying these factors to the Appellants' Motion.

**B. In *Stites,* The Bankruptcy Court Erroneously Found "Substantial Justification" Despite No Evidence to Support the UST's Position.**

In its analysis of the Appellants' EAJA claim in the *Stites* matter, the Bankruptcy Court focused on "two governmental positions in this action of which one was unjustified." (ER12.). As noted in above in the recitation of the facts in *Clements* section, the Bankruptcy Court ruled the UST's position that Howard Law could not represent Oregon residents was unjustified.

1.  **The Bankruptcy Court Erroneously Read into the Agreement A Fact Which Did Not Exist; A Fact Which the Court Itself Rejected in Its Case Opinion.**

Turning to the second position, the Bankruptcy Court described the position as: "Howard Law had either misrepresented its services or failed to perform promised services by agreeing, then failing to review documents that Ms. Stites submitted in connection with the debt settlement program."

The UST's position arises *only* from the Howard Law agreement with Stites which provides that the *law firm* will "review and analyze relevant documents to determine your legal rights and remedies pertaining to your Debt." (ER 191.)

In its Opinion, the Bankruptcy Court rejected the UST's position because the *only* evidence the UST proffered to support its claim was the Howard Law-Stites engagement agreement. This document, the Bankruptcy Court stated, also provided "Howard Law would use the services of "outside companies." (ER 273; *see also* ER 191, at section 3 (The law firm "may utilize the services of outside companies to assist Attorneys in *performing the services under this Agreement.*" (Emphasis added.))  The agreement did not represent that *attorneys* would necessarily review documents; it stated that the *law firm* would review the documents. The evidence demonstrated that "Morgan Drexen staff members [who worked for the law firm and under the supervision of attorneys] undertook to

analyze documents that Stites had provided, and they did so within the first few months of Howard Law's engagement."   (Opinion, ER 278.) This finding of fact was based upon the client file log notes which the UST had in its possession before it brought the lawsuit against Howard.

Ruling on the EAJA Motion, the Bankruptcy Court stated: "Although I ruled against the UST on both arguments, both were substantially justified. The record showed that attorney participation was extremely limited, and an excessive amount of time passed before the services were complete." (ER 12.)

The Bankruptcy Court's analysis in the Order neglects a very important ruling it had made five months earlier:  the only representation made did not commit the law firm to have *attorneys* review the documents.  To wit, the Opinion provides:

> "If the UST is arguing that Howard Law misrepresented its services because Morgan Drexen—rather than an attorney—performed the services, the argument fails. The agreement that Stites signed said that Howard Law would use the services of "outside companies." (ER 265.)

Yet, the Order rewrites the Agreement and provides that the position was justified because attorney participation was limited.

It is important to note that in negotiating the *Clements* matter, the UST took the position that Graeff could continue to represent Clements on condition that his services were "provided without any involvement of … Morgan Drexen.  (ER 219.)  Within four minutes of receiving the proposal Stipulated Order, the General

Counsel of Morgan Drexen sent an email to the UST questioning this proposed

exclusion of Morgan Drexen.  (ER 194.)  His email included the ABA Commission

on Ethics report, published just four months earlier, which addressed the

authorized law firm use of outsourced non-attorneys to assist a law firm with the

provision of its legal services.  (ER 195-217.)

The UST ignored the ABA's report (which included revised ethic rules

approving the use of outsourced non-attorneys) and insisted on the provision in the

final draft of the Stipulation.  (ER 223-225.)

This Court, in *US Currency*, was critical of the Government's failure to

consider the explanation of the claimant's counsel presented upon the initiation of

the investigation.  The UST is vulnerable to the same criticism.  Its failure to

acknowledge the law provided to them in 2012 renders its position unjustified.

Thus, the Bankruptcy Court committed error ruling the position was justified

because the "record showed that attorney participation was extremely limited."

(ER 11.)  The Bankruptcy Court's conclusion belies the evidence and its own

acknowledgment in the Opinion:  there was never a representation or a

commitment that the services would be done exclusively by attorneys.

**2.  The Bankruptcy Court Erroneously Elevated a Theory (With No**

**Factual Support) to a Justified Position.**

21

As to Howard, individually, the Bankruptcy Court ruled that the UST was substantially justified because:

1. his status as principal warranted the UST's attempt to prove that he was personally involved;

2. the corporate behavior at issue was a mode of doing business; it's more reasonable for a party to assume that it will be able to prove a connection between the mode of business of the corporation and the approval or other involvement by its principal.  (ER 012.)

As to the first basis offered by the Bankruptcy Court, the court itself conceded that "the UST offered insufficient evidence of [Howard]'s participation in the corporate violations regarding Ms. Stites."  (ER 012.)  Without evidence, the UST merely had a theory.  "The Government must show that it has not 'persisted in pressing a tenuous factual or legal position, albeit one not wholly without foundation.' It is not sufficient for the Government to show merely 'the existence of a colorable legal basis for the government's case.'"  *Gavette v. Office of Personnel Management*, 785 F.2d 1568 (Fed. Cir. 1986).  As referenced above in the *U.S. v. Rubin* case, the "substantial justification" analysis cannot stop with the Government's suspicion.  It must proceed to the product of its investigation before instituting the lawsuit.

The Opinion, itself, does not specifically address Howard's lack personal involvement in the *Stites* matter. (The Opinion's 2-page recitation of the *Stites* facts does not reflect any personal involvement by Howard. The UST's Complaint, in its 44-paragraph rendition of the facts, does not contain a single allegation against Howard, individually, pertaining to the handling of the Stites engagement (See Complaint, at ¶¶29-73 (ER 023-32).) This was unnecessary, because the Bankruptcy Court found no liability as to Howard Law. With respect to the *Roberts* case, however, the Bankruptcy Court did find liability as to Howard Law. Thus, it was incumbent upon it to address Howard's personal liability. The Bankruptcy Court found in favor of Howard, individually, stating:

> There is *no evidence of his personal involvement*, either by supervision or ratification, in the preparation of the SoFA with its errors and omissions. And the *UST hasn't pointed me to evidence* on which I could ignore the distinction between Howard Law as a corporation and Howard as an individual under any nonbankruptcy legal theory, such as piercing the corporate veil. (ER 283; emphasis added.)

As to the second basis suggested by the Bankruptcy Court—the corporate mode of doing business—the court does not identify the mode of doing business. For that, this Court must turn to the *Stites* Complaint where the UST alleges Howard's personal involvement with the mode of the law firm's performance of legal services for Oregon residents. (ER 032 at ¶¶ 74-75.) And despite the UST's raising the issue with Howard, individually, in connection with the *Clements* case,

in 2012, Howard and Howard Law represented Oregon residents in 2015.  (ER 033-34.)

Thus, while the Bankruptcy Court has stated that it is reasonable for the UST to assume a connection between Howard and the corporate mode of doing business, the underlying predicate is absent.  That is, the "mode of doing business"—Howard Law representing Oregon residents—was authorized under the law.  Further, the Bankruptcy Court found that the UST's position on that "mode of doing business" was unjustified.   It must follow, therefore, that the claim against Howard, individually, is likewise unjustified.


**C. In _Arthur,_ The Bankruptcy Court Erroneously Adopts a "Confused" and "Complex" Standard Dispensing with a Reasonable Basis in Facts.**

The Order summarizes the _Arthur_ holding: "In the Arthur action, the basic flaw that prevented the UST from prevailing was its _failure to establish_ that Graeff, who was Ms. Arthur's attorney, was acting in his capacity as a member of Howard Law when he represented her."  (ER, at 012-013; emphasis added.)    In the language of the Opinion: "[B]ecause there is _no evidence_ that any client actually had this misimpression, I cannot conclude that Graeff exercised apparent authority for Howard Law when he serviced his own separate clients." (Opinion, at ER 267; emphasis added.)

Yet, the Bankruptcy Court indicated, despite no facts which support the UST's position, "the facts were complex and confused enough to consider the UST's position substantially justified."   (ER 013.)

This is clear error for a number of reasons.

First, this "complex and confused" standard does not exist in any case. Rather, the Supreme Court requires that the position have a reasonable basis in fact.  Classifying facts as "complex and confusing" does not provide a reasonable basis.

Second, the Bankruptcy Court, itself, had previously indicated this was not a complex or confusing matter.  Prior to trial, Appellants' moved for leave to designate an ethics expert witness who could discuss the parameters of *of counsel* attorneys in the context of Howard Law and Erik Graeff's solo practice.  The court denied the motion stating that "Oregon ethics matters is something that is researchable and citable *without necessarily being an expert in the area*."  (ER 152; emphasis added.)  This research could have been—and should have been— performed by the UST attorneys.

Third, the Bankruptcy Court's Opinion reflected that there should have no confusion because the evidence was well-defined.  "Graeff's local-counsel engagement letter <u>*made clear*</u> that his own separate clients did not become Howard Law's clients. He acted on behalf of Howard Law only when servicing clients of

Howard Law. Likewise, Morgan Drexen acted as Howard Law's agent only when servicing Howard Law's clients, not when servicing Graeff's clients. (Opinion, at 266; emphasis added). The UST was in possession of this letter before it initiated the *Arthur* action.

Fourth, the Rules of Professional Conduct mandate that an attorney, including a UST attorney, perform the requisite pre-suit investigation before asserting a position. Model Rule 3.1 and Oregon Rules of Professional Conduct 3.1 require that the lawyer's conclusion that there is a non-frivolous basis for the claim or contention be obtained after reasonable inquiry. Accordingly, lawyers are obligated to undertake an adequate preliminary investigation into clients' intended claims and contentions. "Complexity" and "confusing" does not excuse a lawyer from completing her analysis. "The nature and extent of the investigation required will depend on a number of variable factors. These factors include the nature or complexity of the claims or contentions to be investigated or developed, the time in which the investigation must be conducted, the resources available to the lawyer to conduct the investigation, the availability and cooperation of potential fact and expert witnesses, whether expert witnesses must be consulted, the availability of evidence that can be obtained without formal discovery. Douglas Richmond, *Professional Responsibility in Litigation,* Ch. 1 ("Pre-Suit Investigation and Pursuit of Frivolous Claims"), at 4 (ABA 2011).

While the Rule of Professional Conduct speak to an attorney's ethical responsibility to abstain from asserting frivolous positions, ""to be 'substantially justified' means, of course, more than merely undeserving of sanctions for frivolousness." *Pierce*, *supra,* 487 U.S. at 563.

Given the position of the UST, there should be little accommodation for "complexity or confusion." The UST may avail itself to Rule 2004 Examinations which are sanctioned fishing expeditions. Here, the UST took *eight* examinations. The UST has the power to, and did, subpoena documents. As the debtors had filed bankruptcy petitions, the attorney-client privilege belonged to the trustee and, accordingly, the UST secured the attorney-client files which included log notes.

The UST approached these cases against Appellants with what appeared to be endless resources. While the three cases had a value of $17,000 combined, the UST conducted eight 2004 examinations and nine depositions. There were no time constraints.

All witnesses were cooperating. The General Counsel for Morgan Drexen offered to answer all questions for the UST, but the UST chose not to avail itself to his offer. The UST had a remarkable resource available to it – the trustee for the Morgan Drexen estate. The company filed for bankruptcy in April 2015. Geoffrey Golden was appointed the trustee, and upon his motion, he had the Chapter 7 converted to Chapter 11, so he could continue to operate the company. (APP 007.)

In connection with an earlier, different bankruptcy (involving a law firm), Mr. Golden petitioned the bankruptcy court for authorization to employ Morgan Drexen (for its support services) and Howard Law to help Mr. Golden operate a law firm between 2010 and 2015. (APP 009-11.) Mr. Golden had five years' experience with this "complex" and "confusing" arrangement. If the UST was confused, its attorneys had a very accessible resource to clear up any confusion.

Finally, the Bankruptcy Court states in the Order that "a reasonable factfinder might possibly have inferred the necessary confusion from the circumstances, *although I was unable to make that inference*." (ER 014.) Thus, with just two days of live testimony, the Bankruptcy Court unraveled the "confusion." Yet, somehow, the UST with the benefit of the 2012 *Clements* matter, nine months of pre-suit investigation, the cooperation of Morgan Drexen (the General Counsel and the bankruptcy trustee) was incapable of this feat?

Of course, they were; however, the Government was so focused on "regulating" and "enforcement action," that it was unable to appreciate the totality of the evidence. The Government is a public body with an obligation to protect the constitutional rights of individuals and respect the judiciary's compelling interest in the ascertainment of truth. *Caesar v. Mountanos*, 542 F.2d 1064, 1069 (9th Cir 1976).

The EAJA was enacted because of "a concern for the unequal position of the

individual vis à vis an insensitive and ever-expanding governmental bureaucracy." *Ruiz v. I.N.S.,* 813 F.2d 283, 288 (9th Cir.1987). Congress recognized "the government with its greater resources and expertise can in effect coerce compliance with its position." *Id.* (citation omitted). "If private citizens are to be able to assert their civil rights, and if those who violate the Nation['s] fundamental laws are not to proceed with impunity, then citizens must have the opportunity to recover what it costs them to vindicate these rights in court." *Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir.2008) (citation omitted).

### D. In *Roberts,* the UST Should Have Been Aware of Facts Which Would Undermine Its Suspicion that Howard Was Individually Involved.

In *Roberts*, the Bankruptcy Court found that Howard Law violated Section 526 because the law firm's paralegals assisted an outside attorney with drafting a SOFA that contained misinformation.  "The Court could not make the same finding with respect to Mr. Howard based on the evidence at trial because there was no evidence that he personally acted intentionally to cause or to ratify the acts of his employees."  (ER015.)  Nonetheless, the Court found "substantial justification" because "Howard was the only principal of Howard Law so the UST could reasonably have thought that it would be able to demonstrate his participation in that violation even though it ultimately offered no evidence of that participation."

Under the *Pierce* and *US Currency* guidelines, the Bankruptcy Court's analysis fails. Long before initiating the action and certainly before trial, the UST was well aware that Howard did not participate in the preparation of the petition or in approving the work of the law firm's paralegals. (The government's position must be "substantially justified" at "each stage of the proceedings." *Corbin v. Apfel,* 149 F.3d 1051, 1052 (9th Cir.1998). Brann was cooperating with the UST's investigation as early as October 2015 – eight months before the complaint was filed. (ER 229-244.) The log notes that were in the possession of the UST before trial clearly demonstrate that the paralegals were communicating only with Ms. Brann, only, regarding the content of the SOFA. (ER 162.)

As to the Section 329 claim (failure to file a statement of compensation), the Bankruptcy Court found that the "evidence and argument related entirely to Howard Law. If this claim stood on its own, I would have had to conclude that it was unjustifiable to assert it against Mr. Howard." (ER 16.) The Court erred by not applying this same logic to the 526 claims.

### E. The Bankruptcy Court Erred Basing Its Ruling on Isolated Fragments and Not The Totality of the Circumstances

People have willingness to blind themselves to facts they don't want to see. E.F. Schumacher elegantly put it in his guide for the perplexed, "Everything can be seen directly except the eye through which we see."

The UST pursued enforcement against Appellants by weaving an incredible story from an isolated, harmless circumstance.  The Bankruptcy Court erroneously sanctioned this approach in its Order by permitting the elevation of suspicion created by this isolated circumstance to the level of substantial justification. However, in the context of the "totality of the circumstances," the justification for the Government's position dissipates.  The Ninth Circuit has stated that "we look to the record of both the underlying government conduct at issue and the totality of circumstances present before and during litigation." *Barry v. Bowen*, 825 F.2d 1324, 1330 (9th Cir.1987).

Thus, for example, in *Arthur,* the Bankruptcy's Court's finding substantial justification was based on the one fact that Howard Law permitted other law firms to access some of Howard's attorneys when the attorneys needed assistance.  This, according to the Bankruptcy Court, justified the UST's trying to prove that Howard Law was lurking in the background.  However, the totality of the circumstances revealed:

1.  Howard Law did not pay the attorneys for their assistance to the other attorneys.

2.  Arthur was unaware of Howard Law or Vincent Howard;

3.  Arthur believed she was contracted with Graeff Law;

4.  The contract executed by Arthur was with Graeff Law;

5.  Morgan Drexen understood that Arthur was client of Graeff Law;

6.  Arthur testified that she spoke with Erik Graeff;

7.  Arthur did not believe that Graeff or other attorneys were party of Howard Law; to the contrary, she believe the attorneys were part of Graeff Law;

8.  Arthur understood that Morgan Drexen was working for Graeff Law;

9.  There was no evidence that Arthur believed that Morgan Drexen or Graeff were acting on behalf of Vincent Howard or Howard Law;

10. Neither Vincent Howard nor Howard Law had any ownership interest in Graeff Law;

11. Graeff Law was an entity separate from Howard Law;

12. Neither Vincent Howard nor Howard Law has access to the Arthur file;

13. While Erik Graeff testified that he was opted out of using Morgan Drexen to assist him in Oregon, he acknowledged that he did receive notice of Arthur's engagement and that there may be have been some confusion *between him and Morgan Drexen*;

14. All defendants, including Erik Graeff, understood that clients of Graeff Law could remain with Graeff Law regardless of his use of Morgan Drexen's administrative services;

15. Neither Howard nor Howard Law collected any fees from Arthur;

16. Neither Howard nor Howard Law collected fees from Graeff in connection

with the Arthur case.

17. Arthur's personal attorney directed his demand letter to Erik Graeff;

18. Erik Graeff made the decision whether to refund fees to Arthur and how much—without consultation with or participation from Howard;

19. Morgan Drexen did not consult with Howard (nor would it have) regarding the Arthur demand letter;

20. Had Howard directed Morgan Drexen in connection with Arthur, Morgan Drexen would not have followed the direction;

21. The fees were refunded from Graeff's bank account; and,

22. Neither Vincent Howard nor Howard Law had access to or control over any of Graeff's bank accounts. (ER 438-440.)

**F. The Bankruptcy Court Erred by Failing to Award EAJA Fees for the Positions It Found to Be Substantially Unjustified.**

When the Government takes some positions without substantial justification, the question then becomes whether those positions were "sufficiently dramatic in impact" to allow an award of fees." *Loomis v. United States,* 74 Fed. Cl. 350, 355 (2006).

In *Precision Pine & Timber v. The United States,* 81 Fed. Cl. 733 (2008) (see page 16 of Appendix), the court found the impact of the Government's unreasonable position was "sufficiently dramatic" to allow an award of fees. "Not

only did [the Government] proffer unreasonable arguments that prolonged the

litigation, it continued to make those arguments in the face of *judicial incredulity*."

(APP 027; emphasis added.)

"Judicial incredulity" is precisely what the UST confronted with its position

that Howard Law could not represent Oregon residents.  On the second day of trial,

in the middle of the UST's prolonged examination Mr. Howard concerning the

firm's California Bar records, the Bankruptcy Court interrupted and asked the UST

attorneys: "What is your theory?"  The UST explained that Howard Law was

replied that the Oregon attorneys who were representing Oregon resident were not

Howard Law attorneys.

The Bankruptcy Court responded: "*I got to be honest with you.  I am not

seeing it*.  And we may as well talk about it right now, so you can focus your

questions." (Day II, 3:38-3:39)

The UST further explained that Howard Law had violated Oregon Revised

Statute 58.129 (transacting business by a foreign corporation).  The Bankruptcy

Court indicated the he would be "interested to hear more about what the effect of a

violation of 58.129 is especially with respect to 526."

Here is where the UST's position degrades from "unjustified" to "bad faith."

The UST continued to argue that a failure to register as a foreign corporation

means that Howard Law could not transact business in Oregon. (Closing

Argument, at 49.)  The UST misrepresented to the Court black-letter law.

The relevant statute, ORS §60.704, entitled "Consequences of Transacting Business without Authority," provides that failure to register to do business prevents the foreign corporation from initiating an action in state court – until registration fees are paid. However, the statute also specifically provides that "[t]he failure of a foreign corporation to obtain authority to transact business in this state *does not impair the validity of its corporate acts* or prevent it from defending any proceeding in this state." ORS §60.704(5) (emphasis added).

It was this same unjustified position under threat of enforcement action that created the quandary for Howard Law in *In re Clements*.  Howard Law succumbed in 2012 to the UST's threats.  (ER 226-228.)  Horrible, unjustified precedent was created that impacted Howard Law's national practice.

This is precisely why Congress enacted EAJA.  The Committee Reports of both the House and the Senate reflect the dual concerns of access for individuals and improvement of Government policies:

> "[T]he Government with its greater resources and expertise can in effect coerce compliance with its position. Where compliance is coerced, precedent may be established on the basis of an uncontested order rather than the thoughtful presentation and consideration of opposing views. In fact, there is evidence that small businesses are the target of agency action precisely because they do not have the resources to fully litigate the issue. This kind of truncated justice undermines the integrity of the decision-making process." H.Rep. No. 96-1418, p. 12 (1980).

This approach is consistent with the Ninth Circuit approach to Rule 11 sanctions – which permits the court to sanction parties, including the government, for unjustified, frivolous claims.  The Supreme Court stated, "It is now clear that the central purpose of Rule 11 is to deter baseless filings in District Court and thus, consistent with the Rule Enabling Act's grant of authority, streamline the administration and procedure of the federal courts."  *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990).  The Ninth Circuit has ruled that it would ill serve the purpose of deterrence to allow a "safe harbor" for improper or unwarranted allegations. *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1363 (9th Cir. 1990) (en banc). Were a "safe harbor" permitted, a party that has one non-frivolous claim may pile on frivolous allegations without a significant fear of sanctions.  *Id*.

## VIII.  <u>CONCLUSION</u>

Despite its nearly one-year investigation, the UST was unable to uncover any fact supporting its theories of liability on the claims upon which Appellants prevailed.  The Bankruptcy Court, at most, has justified the UST's investigation; however, with eight Rule 2004 Examinations, it what clear that the evidence to

support their theories was not there.  Its decision to litigate its position was

unjustified.

DATED: November 14, 2018                    KESHER LAW GROUP, P.C.


                                                    /s/ Jeffrey A. Katz

                                        By: _____
                                                Jeffrey A. Katz,
                                                attorneys for the
                                                Appellants

CERTIFICATE OF COMPLIANCE

Federal Rules of Bankruptcy Procedure 8015(a)(7)(C)


I certify that this opening brief was prepared with Microsoft Word 2012, and

that, according to that program's word-count function, the sections covered by

FRBP 8014(a)(2)-(10) contain 7,808 words.


DATED: November 14, 2018                    KESHER LAW GROUP, P.C.


                                            /s/ Jeffrey A. Katz

                                    By: _____
                                            Jeffrey A. Katz,
                                            attorneys for the
                                            Appellants

# APPENDIX

## TABLE OF CONTENTS

1.  EAJA Statute                                        APP 001 – 006

2.  *In re Morgan Drexen* – Order Granting Chapter      APP 007 – 008
    7 Trustee's Emergency Motion to Convert
    Chapter 7 Case to One Under Chapter 11

3.  *In re United Law Group* – Order re Trustee's       APP 009 - 015
    Motion Authorizing Trustee to Operating Debtor's
    DSP Business, Approving Trustee's Agreement
    With Morgan Drexen, Inc., and Approving the
    Employment of Law Firm of Howard Nassiri

4.  *Precision Pine & Timber v. The United States*      APP 016 - 030
     81 Fed. Cl. 733 (2008)

APPENDIX

28 U.S. Code § 2412 - Costs and fees

**(a)**

**(1)**

Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title, but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. A judgment for costs when taxed against the United States shall, in an amount established by statute, court rule, or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation.

**(2)**

A judgment for costs, when awarded in favor of the United States in an action brought by the United States, may include an amount equal to the filing fee prescribed under section 1914(a) of this title. The preceding sentence shall not be construed as requiring the United States to pay any filing fee.

**(b)**

Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

**(c)**

**(1)**

Any judgment against the United States or any agency and any official of the United States acting in his or her official capacity for costs pursuant to subsection (a) shall be paid as provided in sections 2414 and 2517 of this title and shall be in addition to any relief provided in the judgment.

**(2)**

Any judgment against the United States or any agency and any official of the United States acting in his or her official capacity for fees and expenses of attorneys pursuant to subsection (b) shall be paid as provided in sections 2414 and 2517 of this title, except that if the basis for the award is a finding that the United States acted in bad faith, then the award shall be paid by any agency found to have acted in bad faith and shall be in addition to any relief provided in the judgment.

**(d)**

   **(1)**

      **(A)**

      Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

      **(B)**

      A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also

allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

**(C)**

The court, in its discretion, may reduce the amount to be awarded pursuant to this subsection, or deny an award, to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy.

**(D)**

If, in a civil action brought by the United States or a proceeding for judicial review of an adversary adjudication described in section 504(a)(4) of title 5, the demand by the United States is substantially in excess of the judgment finally obtained by the United States and is unreasonable when compared with such judgment, under the facts and circumstances of the case, the court shall award to the party the fees and other expenses related to defending against the excessive demand, unless the party has committed a willful violation of law or otherwise acted in bad faith, or special circumstances make an award unjust. Fees and expenses awarded under this subparagraph shall be paid only as a consequence of appropriations provided in advance.

**(2)** For the purposes of this subsection—

**(A)**

"fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses

paid by the United States; and (ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.);

**(B)**

"party" means (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed; except that an organization described in section 501(c)(3) of the Internal Revenue Code of 1986 (26 U.S.C. 501(c)(3)) exempt from taxation under section 501(a) of such Code, or a cooperative association as defined in section 15(a) of the Agricultural Marketing Act (12 U.S.C. 1141j(a)), may be a party regardless of the net worth of such organization or cooperative association or for purposes of subsection (d)(1)(D), a small entity as defined in section 601 of title 5;

**(C)**

"United States" includes any agency and any official of the United States acting in his or her official capacity;

**(D)**

"position of the United States" means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based; except that fees and expenses may not be awarded to a party for any portion of the litigation in which the party has unreasonably protracted the proceedings;

**(E)**

"civil action brought by or against the United States" includes an appeal by a party, other than the United States, from a decision of a

contracting officer rendered pursuant to a disputes clause in a contract with the Government or pursuant to chapter 71 of title 41;

**(F)**

"court" includes the United States Court of Federal Claims and the United States Court of Appeals for Veterans Claims;

**(G)**

"final judgment" means a judgment that is final and not appealable, and includes an order of settlement;

**(H)**

"prevailing party", in the case of eminent domain proceedings, means a party who obtains a final judgment (other than by settlement), exclusive of interest, the amount of which is at least as close to the highest valuation of the property involved that is attested to at trial on behalf of the property owner as it is to the highest valuation of the property involved that is attested to at trial on behalf of the Government; and

**(I)**

"demand" means the express demand of the United States which led to the adversary adjudication, but shall not include a recitation of the maximum statutory penalty (i) in the complaint, or (ii) elsewhere when accompanied by an express demand for a lesser amount.

**(3)**

In awarding fees and other expenses under this subsection to a prevailing party in any action for judicial review of an adversary adjudication, as defined in subsection (b)(1)(C) of section 504 of title 5, United States Code, or an adversary adjudication subject to chapter 71 of title 41, the court shall include in that award fees and other expenses to the same extent authorized in subsection (a) of such section, unless the court finds that during such adversary adjudication the position of the United States was substantially justified, or that special circumstances make an award unjust.

**(4)**

Fees and other expenses awarded under this subsection to a party shall be paid by any agency over which the party prevails from any funds made available to the agency by appropriation or otherwise.

**(e)**

The provisions of this section shall not apply to any costs, fees, and other expenses in connection with any proceeding to which section 7430 of the Internal Revenue Code of 1986 applies (determined without regard to subsections (b) and (f) of such section). Nothing in the preceding sentence shall prevent the awarding under subsection (a) of section 2412 of title 28, United States Code, of costs enumerated in section 1920 of such title (as in effect on October 1, 1981).

**(f)**

If the United States appeals an award of costs or fees and other expenses made against the United States under this section and the award is affirmed in whole or in part, interest shall be paid on the amount of the award as affirmed. Such interest shall be computed at the rate determined under section 1961(a) of this title, and shall run from the date of the award through the day before the date of the mandate of affirmance.



Thomas H. Casey – Bar No. 138264
Kathleen J. McCarthy – Bar No. 132637
Steve Burnell – Bar No. 286557
LAW OFFICE OF THOMAS H. CASEY, INC.
22342 Avenida Empresa, Suite 200
Rancho Santa Margarita, CA  92688
Telephone:      (949) 766-8787
Facsimile:      (949) 766-9896
Email:          TomCasey@tomcaseylaw.com

Proposed General Insolvency
Counsel for Jeffrey I .Golden
Chapter 7 Bankruptcy Trustee

**FILED & ENTERED**

**MAY 14 2015**

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY firman      DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA / SANTA ANA DIVISION

|  |  |
|---|---|
| In re<br><br>MORGAN DREXEN, INC., a Nevada Corporation,<br><br>             Debtor. | Case No. 8:15-bk-12278-CB<br><br>Chapter 7<br><br>**ORDER GRANTING CHAPTER 7 TRUSTEE'S EMERGENCY MOTION TO CONVERT CHAPTER 7 CASE TO ONE UNDER CHAPTER 11 AND TO APPOINT A CHAPTER 11 TRUSTEE PURSUANT TO 11 U.S.C. §706 AND 11 U.S.C. §1104**<br><br>Hearing Date<br>Date:  May 11, 2015<br>Time:  1:30 p.m.<br>Ctrm:  5D |

A hearing was held on May 11, 2015, at 1:30 p.m., before the Honorable Catherine E. Bauer, United States Bankruptcy Judge for the Central District of California, in Courtroom 5D located at 411 West Fourth St., Santa Ana, CA, on Chapter 7 Trustee's Emergency Motion to Convert Chapter 7 Case to One Under Chapter 11 and to Appoint a Chapter 11 Trustee Pursuant to 11 U.S.C. Section 706 and 11 U.S.C. Section 1104 filed May 11, 2015 as Docket #11 ("Motion").

APP007

Appearances were made by Thomas H. Casey of the Law Offices of Thomas H. Casey, proposed general counsel to the Chapter 7 Trustee; Chapter 7 Trustee Jeffrey I. Golden; Attorney Jeffrey Katz, for the Defendants in the adversary proceeding; Assistant United States Trustee Frank M. Cadigan, and Attorney R. Gabriel D. O'Malley for the Consumer Federal Protection Bureau appeared telephonically.

The Court having read and considered the Motion, heard the statements of counsel and with good cause shown,

**IT IS ORDERED:**

1. The Motion is granted.

2. This case is converted from a Chapter 7 to one under Chapter 11.

3. The Court directs the Office of the United States Trustee to appoint a Chapter 11 Trustee.

###

Date: May 14, 2015

Catherine Bauer
United States Bankruptcy Judge

2

APP008

Thomas H. Casey - Bar No. 138264
Kathleen M. Goldberg - Bar No. 132637
LAW OFFICE OF THOMAS H. CASEY, INC.
A PROFESSIONAL CORPORATION
22342 Avenida Empresa, Suite 260
Rancho Santa Margarita, CA  92688
Telephone:    (949) 766-8787
Facsimile:     (949) 766-9896
Email:           TomCasey@tomcaseylaw.com
Email:           KGoldberg@tomcaseylaw.com

Attorney for Jeffrey I. Golden
Chapter 7 Trustee

```
┌─────────────────────────────┐
│      FILED & ENTERED        │
│                             │
│       DEC 13 2010           │
│                             │
│  CLERK U.S. BANKRUPTCY COURT│
│   Central District of California│
│  BY kent      DEPUTY CLERK  │
└─────────────────────────────┘
```

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA / SANTA ANA DIVISION

| | |
|---|---|
| In re | Case No.: 8:10-bk-18945-RK |
| UNITED LAW GROUP, INC., | Chapter 7 |
| Debtor. | **ORDER RE: TRUSTEE'S MOTION AUTHORIZING TRUSTEE TO OPERATE THE DEBTOR'S DSP BUSINESS, APPROVING TRUSTEE'S AGREEMENT WITH MORGAN DREXEN, INC., AND APPROVING THE EMPLOYMENT OF THE LAW FIRM OF HOWARD NASSIRI, A PROFESSIONAL CORPORATION, AS TRUSTEE'S SPECIAL COUNSEL** |
| | DATE: November 22, 2010 |
| | TIME:  2:00 P.M. |
| | CTRM: 5D |

The Chapter 7 Trustee's Ex Parte Motion For Order Authorizing the Trustee to Operate the Debtor's DSP Business, Approving the Trustee's Agreement with Morgan Drexen, Inc. ("MDI"), and Approving the Employment of the Law Firm of Howard Nassiri, A Professional Corporation, as the Trustee's Special Counsel ("Motion"), came on for hearing on November 22, 2010, the Honorable Robert N. Kwan, United States Bankruptcy Judge presiding. There was no written opposition to the Motion.

1      Thomas Casey, counsel for the Chapter 7 Trustee, and Chapter 7 Trustee, Jeffrey I.

2 Golden appeared on behalf of the bankruptcy estate telephonically.  George L. Baugh appeared

3 on behalf of Vito Torchia, Esq. and Brookstone Law, P.C. ("Defendants"), Glenn Dassoff, Esq.

4 of Paul Hastings Janofsky and Walker, LLP appeared on behalf of Morgan Drexen, Inc., and

5 Valerie Brennan, Esq. of Bryan Cave, LLP appeared on behalf of Bank of America.

6      **IT IS HEREBY ORDERED** that the Trustee is authorized to operate the Debtor's DSP

7 business as to clients who are not residents of California and such operations shall include but

8 not be limited to collecting the fees remitted by the Debtor's debt settlement program ("DSP")

9 clients who are not residents of California and disbursing such fees to the client's creditors and

10 MDI pursuant to the relevant contracts, pending further order of the Court;

11      **IT IS FURTHER ORDERED** that the Trustee is authorized to enter into and execute

12 any documents necessary to facilitate the continued operation of the DSP Business;

13      **IT IS FURTHER ORDERED** that the Trustee is authorized to enter into the Contract

14 with MDI as provided in the Motion and to compensate MDI per the terms stated in the Contract;

15      **IT IS FURTHER ORDERED** that, pursuant to the Trustee's Contract with MDI, upon

16 entry of this Order, MDI is required to immediately reverse the Debtor's prior instructions and to

17 instruct the Automatic Clearing House to re-commence depositing all of the Debtor's DSP Client

18 withdrawals into a bank account in the name of "Jeffrey I. Golden, Chapter 7 Trustee for the

19 Bankruptcy Estate of United Law Group, Inc."

20      **IT IS FURTHER ORDERED** that the employment of Howard Nassari, P.C. as special

21 counsel, as to DSP clients that are not residents of California, and as otherwise provided in the

22 Motion, is approved;

23      **IT IS FURTHER ORDERED** that the Trustee may compensate Howard Nassari, P.C.

24 on a monthly basis upon the terms stated in the Motion;

25      **IT IS FURTHER ORDERED** that Howard Nassari, P.C shall provide monthly

26 statements to the Trustee and all fees and expenses are subject to approval by the Bankruptcy

27 Court;

28

APP010

1      **IT IS FURTHER ORDERED** that the Trustee shall file and serve on Defendants

2 monthly operating reports with regards to the operation of the DSP Business;

3      **IT IS FURTHER ORDERED** that, absent a stipulation with the Defendants or a Court

4 order, the Trustee shall only make disbursements that are in the ordinary course of the DSP

5 Business;

6      **IT IS FURTHER ORDERED** that, in the event the Trustee desires to make a

7 disbursement that is not in the ordinary course of business, the Trustee and the Defendants shall

8 use their best faith efforts to agree to the terms of a stipulation authorizing such a disbursement;

9      **IT IS FURTHER ORDERED** that, if the Trustee and Defendants agree to a

10 disbursement that is not in the ordinary course of business, the parties may forward to Bank of

11 America a stipulation authorizing the Trustee to make the disbursement without further Court

12 order;

13      **IT IS FURTHER ORDERED** that, if the Trustee and Defendants cannot agree to a

14 stipulation authorizing the Trustee to make a disbursement that is not in the ordinary course of

15 business, the parties may request a ruling from the Court;

16      **IT IS FURTHER ORDERED** that the Trustee and the Defendants shall use their best

17 efforts to expeditiously agree to a fair and reasonable compensation for the Defendants for their

18 services provided to the members of the debt settlement program that are residents of the State of

19 California ("California Members");

20      **IT IS FURTHER ORDERED** that, if the Trustee and Defendants agree to a fair and

21 reasonable compensation for the Defendants for providing services to the California Members,

22 the parties may forward to Bank of America a stipulation authorizing payment of such

23 compensation without further Court order.

24      **IT IS FURTHER ORDERED** that, if the Trustee and Defendants cannot agree to a

25 reasonable compensation for the Defendants for providing services to the California Members,

26 the parties may request a ruling from the Court;

27      **IT IS FURTHER ORDERED** that this order shall supersede the Court's order on the

28 Motion that was entered in the above-captioned case on December 8, 2010, as Docket #53;

APP011

1

    **IT IS FURTHER ORDERED** that the Motion is continued for further hearing to

2

December 13, 2010 at 9:00 a.m.

3

APPROVED AS TO FORM AND CONTENT:

4

The Law Office of Thomas H. Casey, Inc.

5

6

Thomas H. Casey, Attorney for Chapter 7
Trustee, Jeffrey I. Golden

7

8

The Law Office of George L. Baugh

9

10

George L. Baugh, Attorney for Brookstone Law, P.C., a

11

Professional Corporation and Vito Torchia, Jr.

12

                          ###

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DATED: December 13, 2010

                             United States Bankruptcy Judge

27

28

4

Case 8:10-bk-18945-RK    Doc 55    Filed 12/13/10    Entered 12/13/10 13:15:11    Desc
Main Document    Page 5 of 7

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I.
Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**22342 Avenida Empresa, Ste. 260, Rancho Santa Margarita, CA 92688**

The foregoing document described <u>Order re Trustee's Motion Authorizing Trustee to Operate the Debtor's DSP Business, Approving Trustee's Agreement with Morgan Drexen, Inc. and Approving the Employment of the Law Firm of Howard Nassiri, a Professional Corporation, as Trustee's Special Counsel</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On_____I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐Service information continued on attached page

**II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
On <u>December 7, 2010</u> I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the <u>United States Mail, first class, postage prepaid</u>, ~~and/or with an overnight mail service~~ addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

US Bankruptcy Court
Attn: Hon. Robert N. Kwan
411 West Fourth St., Ste. 5165
Santa Ana, CA 92701

☐Service information continued on attached page

**III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  *Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be</u> completed no later than 24 hours after the document is filed.*

☐Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| December 7, 2010 | Marissa Silva | /s/ Marissa Silva |
|---|---|---|
| Date | Type Name | Signature |

5

APP013

Case 8:10-bk-18945-RK    Doc 55    Filed 12/13/10    Entered 12/13/10 13:15:11    Desc
Main Document    Page 6 of 7

**NOTE TO USERS OF THIS FORM:**
1) Attach this form to the last page of a proposed Order or Judgment.  Do not file as a separate document.
2) The title of the judgment or order and all service information must be filled in by the party lodging the order.
3) **Category I.** below:  The United States trustee and case trustee (if any) will always be in this category.
4) **Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

**NOTICE OF ENTERED ORDER AND SERVICE LIST**

Notice is given by the court that a judgment or order entitled (specify) Order re Trustee's Motion Authorizing Trustee to Operate the Debtor's DSP Business, Approving Trustee's Agreement with Morgan Drexen, Inc. and Approving the Employment of the Law Firm of Howard Nassiri, a Professional Corporation, as Trustee's Special Counsel was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of December 7, 2010 the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- George L Baugh    glb3law@yahoo.com
- Robert J Buscho    rbuscho@unitedlawgroup.com, dkruid@unitedlawgroup.com
- Thomas H Casey    msalustro@tomcaseylaw.com
- Thomas H Casey    msilva@tomcaseylaw.com
- Jeffrey I Golden (TR)    ljones@wgllp.com, jgolden@ecf.epiqsystems.com
- Nancy S Goldenberg    nancy.goldenberg@usdoj.gov
- William A Smelko    wasmelko@aol.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid to the following person(s) and/or entity(ies) at the address(es) indicated below:

**Debtor**
United Law Group
2525 Campus Drive
Irvine, CA 92612

☐Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s) and/or email address(es) indicated below:

☒Service information continued on attached page

6

APP014

**TO BE SERVED BY THE LODGING PARTY:**

**Debtor's Counsel**
Robert Buscho
United Law Group
2525 Campus Drive
Irvine, CA 92612

Robert Buscho
4140 Carol Dr., Apt. A
Fullerton, CA 92833

**Interested Parties**
Vito Torchia, Jr.
1999 Avenue of the Stars, Ste. 1100
Los Angeles, CA 90067

Brookstone Law P.C.
1999 Avenue of the Stars, Ste. 1100
Los Angeles, CA 90067

Brookstone Law, P.C.
• National Registered Agents, Inc., Agent for Service of Process
2875 Michelle Drive, Ste. 100
Irvine, CA 92606

Bank of America
• Stuart Price
Bryan Cave LLP
3161 Michelson Drive, Ste. 1500
Irvine, CA 92612-4414

Bank of America
• CT Corporation, Agent for Service of Process
818 W. 7th Street, #200
Los Angeles, CA 90017-3425

**Interested Parties**
Kelly Johnson, Esq.
180 Newport Center Drive, Ste. 100
Newport Beach, CA 92660

Jack Cornman, Esq.
Cornman & Swartz
19800 MacArthur Blvd., Ste. 820
Irvine, CA 92612

Glenn Dassoff
Paul Hastings et al
695 Town Center Dr., 17th Floor
Costa Mesa, CA 92626-1924

Jeffrey Katz
Morgan Drexen, Inc.
Arena Sports Center
1600 South Douglass Road
Anaheim, CA 92806

Sean Rutledge
Rural Route 2 #4006
Pahoa, HI 96778

7

APP015

# In the United States Court of Federal Claims

No. 02-131 C
Filed September 9, 2008
TO BE PUBLISHED

| | |
|---|---|
| ) | |
| PRECISION PINE & TIMBER, INC., ) | Motion for attorneys' fees and expenses under |
| ) | Equal Access to Justice Act, 28 U.S.C. |
| Plaintiff, ) | § 2412(d); counterclaim by Government for |
| ) | damages due to plaintiff's breach of timber |
| ) | contracts; plaintiff as prevailing party where |
| v. ) | judgment entered in favor of defendant for |
| ) | substantially less than amount sought on |
| ) | counterclaim; whether Government's position |
| THE UNITED STATES, ) | lacked substantial justification; effect of |
| ) | plaintiff's partial success. |
| Defendant. ) | |
| ) | |

Alan I. Saltman, Saltman & Stevens, P.C., Washington, D.C., for plaintiff.  Richard W. Goeken, Saltman & Stevens, P.C., Washington, D.C., of counsel.

David A. Harrington, Trial Attorney, Bryant G. Snee, Deputy Director, Jeanne E. Davidson, Director, Gregory G. Katsas, Acting Assistant Attorney General, United States Department of Justice, Washington, D.C., for defendant.  Lori Polin Jones, Department of Agriculture, Washington, D.C., of counsel.

## OPINION AND ORDER

GEORGE W. MILLER, Judge.

This matter is before the Court on plaintiff's motion for an award of attorneys' fees and expenses pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d).  On February 14, 2008, plaintiff filed a motion for attorneys' fees (Pl.'s EAJA Mot., docket entry 111), seeking a total of $220,108.64 in fees and expenses.  Defendant filed a response on May 12, 2008 (Def.'s Response, docket entry 125).  Plaintiff filed a reply on June 6, 2008 (Pl.'s

Reply, docket entry 130). In its reply, plaintiff revised the amount of fees and expenses sought from $220,108.64 to $245,923.07.[1]

## Background

This Opinion and Order assumes familiarity with the decisions in *Precision Pine & Timber, Inc. v. United States*, 62 Fed. Cl. 635 (2004), and *Precision Pine & Timber, Inc. v. United States*, 75 Fed. Cl. 80 (2006). A brief summary of pertinent facts follows.

Precision Pine & Timber, Incorporated ("Precision") is an Arizona company that purchases federal timber to supply its lumber manufacturing operations. This action arises out of ten timber contracts awarded to Precision between August 1992 and December 1998 by the United States Forest Service.[2] On January 9, 2001, the Forest Service, which is part of the Department of Agriculture, terminated these contracts for default for alleged failure to maintain bonding through an acceptable surety. *Precision Pine*, 75 Fed. Cl. at 80, 83.

At the time of the terminations, nine of the contracts were at issue in a companion case pending before Chief Judge Edward J. Damich. *See Precision Pine & Timber v. United States*, 50 Fed. Cl. 35, 38 n.1 (2001). Between February and April 2001, the Forest Service issued initial "Bills for Collection" for default damages it alleged were due, calculating the damages using "estimated" resale values. *Precision Pine*, 75 Fed. Cl. at 80, 84. On July 30, 2001, Chief Judge Damich issued his decision finding that the Forest Service had breached eight of the contracts. Precision subsequently filed this action on February 15, 2002, alleging that the Forest Service improperly terminated the timber sale contracts and Precision was therefore not liable for default damages. The Government filed a counterclaim seeking the default damages it asserted were due. *Precision Pine*, 62 Fed. Cl. at 639. Precision alleged that the Forest Service's default damage calculations, which were based on resale estimates, were inconsistent with the governing contractual provisions. *Id*. at 653-55. On March 25, 2004, defendant moved for summary judgment on its counterclaim. *Id*. at 636. The same day, plaintiff moved to dismiss defendant's counterclaim for lack of subject matter jurisdiction, or in the alternative for summary judgment with respect to the counterclaim, asserting that the Forest Service failed to comply with the terms of the parties' contracts in computing damages. *Id.* On October 29, 2004, this Court denied Precision's motion to dismiss. *Id.* The Court also granted the Government's motion for

---

[1] In its reply, Precision recalculated the fees and expenses it sought to account for errors in the original calculation and to update its claim to take into account additional fees and expenses incurred. Precision now seeks the recovery of $235,797.26 in fees and $10,125.81 in expenses. Pl.'s Reply at 32.

[2] Originally, there were twelve contracts at issue: O.D. Ridge, Brookbank, Jersey Horse, Saginaw-Kennedy, Brann, U-Bar, Monument, Manaco, Hutch-Boondock, Gentry, Wiggins, and Lily. However, the Government did not claim damages related to two of those contracts, Manaco and Brookbank. *Precision Pine*, 62 Fed. Cl. at 639.

APP017

summary judgment to the extent that the Court found that Precision breached the contracts at issue. *Id.* The Court denied the Government's motion, and granted Precision's motion, with respect to whether the Forest Service's damage calculations were proper. *Id.*

The Court held that the contracts provided "two alternative methods for determining damages in the event of breach: one where the timber has been resold; and the other where the timber has not been resold." *Id.* at 654. Under the first method, the Forest Service had to "wait until the resale [was] concluded to calculate damages." *Id.* at 655. Under the second method, the Forest Service could "decide . . . not to resell the contract and calculate the damages immediately." *Id.* The Court held that by attempting to collect its so-called "estimated damages," the Forest Service employed a "third method" that was not permitted under the contracts. *Id.* The Court ordered the Forest Service to recalculate its damages in accordance with the governing contract terms within six months of the date of the Court's opinion. *Id.* at 656.

On April 28, 2005, the Forest Service issued its initial damage calculations in accordance with the Court's order, and subsequently revised its damage calculations on two occasions. In its revised damage calculations, the Forest Service also asserted for the first time that it was entitled to interest and penalties accruing from early 2001, the exact date depending on when the Forest Service issued its initial bill for collection on each individual contract. *See Precision Pine*, 75 Fed. Cl. at 85.

Precision then filed a motion for summary judgment, arguing that: (1) interest and penalty charges should not have begun to accrue until September 16, 2005, the date on which the Government submitted its final revised damage calculations in accordance with the Court's 2004 opinion; (2) a variable, rather than fixed, rate of interest should have been used in the damage calculations; (3) the Forest Service improperly charged interest simultaneously under two provisions of the contracts —CT4.41 and CT9.4; (4) Precision was entitled to transfer certain earned purchaser credits from the Brookbank contract to offset amounts it owed the Forest Service on other contracts; (5) the Forest Service failed to mitigate its damages with respect to the Wiggins contract; (6) Precision was not liable for penalty charges on the U-Bar contract; and (7) penalty charges, where appropriate, should have been calculated annually as of the midpoint of each annual period. The Government, on the other hand, argued that: (1) interest and penalty charges should have begun to accrue as of the dates in 2001 on which the Forest Service issued its original bills for collection based upon its estimated damages calculations; (2) a fixed rate of interest was properly used in the damages calculations; (3) the Forest Service was entitled to collect interest simultaneously under both CT4.41 and CT9.4; (4) Precision was not entitled to transfer any remaining earned purchaser credits from the Brookbank contract to offset amounts it owed the Forest Service on other contracts; (5) the Forest Service did not fail to mitigate damages under the Wiggins contract; (6) Precision owed the Forest Service penalty charges on the U-Bar contract; and (7) penalty charges were properly calculated annually as of the last day of each annual period.

APP018

On December 22, 2006, the Court issued its decision on the cross-motions for summary judgment.  Precision prevailed to the following extent.  The Court granted Precision's motion with respect to the timing of the accrual of interest and penalties to the extent that it held that interest and penalties did not accrue until April 28, 2005, the date on which the Forest Service submitted its first set of bills for collection following the Court's remand with instructions to compute the amounts due in accordance with the Court's interpretation of the contracts.  The Court also granted Precision's motion regarding penalty charges on the U-Bar contract, holding that the contract required the suspension of penalties during the pendency of the proceedings.  *Precision Pine*, 75 Fed. Cl. at 83, 88-90, 97-98.[3]

The Government appealed the Court's rulings with respect to the time for commencement of accrual of interest and penalties.  A unanimous panel of the Federal Circuit affirmed pursuant to Federal Circuit Rule 36, which allows for entry of a judgment of affirmance without an opinion.  *Precision Pine & Timber, Inc. v. United States*, 257 F. App'x 268 (Fed. Cir. Nov. 9, 2007).  The Government did not appeal the Court's ruling rejecting the Government's "estimated damages" approach as inconsistent with the contracts.

Following the affirmance by the Federal Circuit, Precision filed this motion to recover attorneys' fees and expenses under the EAJA.

## Analysis

The EAJA provides that:

> a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in a civil action . . . including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A).

Precision asserts that it meets the threshold requirements of having filed its application in a timely manner and being an eligible corporate party.  Pl.'s EAJA Mot. at 2-3.  Defendant has not contested Precision's threshold eligibility.  Rather, defendant opposes Precision's application on the basis that Precision is not entitled to attorneys' fees and expenses under the EAJA because it is not a prevailing party, and that, even if it were a prevailing party, the Government's position was substantially justified.  Def.'s Response at 2.  The Court addresses each of defendant's arguments in turn below.

---

[3] The parties' dispute regarding simultaneous accrual of interest under two contract provisions became moot.  *Precision Pine*, 75 Fed. Cl. at 90.

4

## I.    Prevailing Party Status

Under the EAJA, a prevailing party is one who "succeeded 'on any significant issue which achieves some of the benefits sought by the suit.'" *Loomis v. United States*, 74 Fed. Cl. 350, 353 (2006); *see also Davis v. Nicholson*, 475 F.3d 1360 (Fed. Cir. 2007) ("A party prevails in a civil action if he receives 'at least some relief on the merits of his claim.'") (citing *Buckhannon Bd. & Care Home, Inc. v. West Va. Dep't of Health & Human Res.*, 534 U.S. 598, 603-04 (2001)). As the Federal Circuit has stated, a plaintiff prevails "when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Neal & Co., Inc. v. United States*, 121 F.3d 683, 685 (Fed. Cir. 1997). In rejecting the "catalyst theory"[4] that had been adopted by some courts, the Supreme Court made clear that the alteration in the legal relationship with respect to the particular issue on which the plaintiff alleges it prevailed must come about as the result of an enforceable judgment, court order, or their equivalent, in order to have the requisite judicial imprimatur. *Buckhannon*, 532 U.S. at 603-04; *see also Am. Disability Ass'n, Inc. v. Chmielarz*, 289 F.3d 1315, 1319 (11th Cir. 2002) ("[T]he essential test established by [*Buckhannon*] requires the plaintiff to achieve a 'judicially sanctioned change in the legal relationship of the parties.'").

Defendant makes the argument that Precision is not a prevailing party because it "failed to obtain a judgment on the merits. Rather, judgment was entered in favor of the United States." Def.'s Response at 2. But in *Buckhannon*, the Supreme Court noted that to receive fees a party need only "prevail[] on the merits of at least some of his claims." *Buckhannon*, 532 U.S. at 603 (quoting *Hanrahan v. Hampton*, 446 U.S. 754, 758 (1980) (per curiam)). It would be unduly restrictive to look only at whether the judgment is in one party's favor, and not whether that judgment may also reflect the other party's success on a significant issue in controversy. Under such a crabbed view, Precision here would fail to be a prevailing party not because it was unsuccessful on all significant issues in controversy—which clearly was not the case—but instead due to the posture of the case. For example, Precision could, in theory, have made payment to the Forest Service based on the bills of collection and then brought suit in this court claiming that the Forest Service had assessed unwarranted and excessive default damages.[5] *See generally Arcata Forest Prods. Co. v. United States*, 18 Cl. Ct. 93 (1989), *aff'd*, 915 F.2d 1584

---

[4] The "catalyst theory" posited that "a plaintiff [could be] a 'prevailing party' if it achieve[d] the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon*, 532 U.S. at 601.

[5] As a practical matter, however, this course of action was not open to Precision. It did not have the resources to pay the bills of collection at the time of issuance and subsequently challenge their validity. Precision's poor financial health was itself due to what the Court found to be "the debilitating effect of the [Government's] suspensions on plaintiff's post-suspension [financial] performance in the real world." *See Precision Pine v. United States*, 81 Fed. Cl. 733, 738 (2008).

5

(1990) (unpublished table decision).  The Forest Service would have argued that the terminations for default and the method of calculating damages were proper.  In that event, the Court would presumably have reached the same result, *i.e.*, reducing the amount the Government could collect from $1,028,550.47 (that is, $767,625.72 in principal plus interest and penalties of $260,924.75) to $427,994.20, but by way of entering a judgment in favor of plaintiff in the amount of $600,556.27.  *See infra* at 14.

Courts interpreting the term "prevailing party" do not focus only on the formalistic identification of the party in whose favor judgment was entered, but instead include within the category of "prevailing party" applicants that prevail on an *issue or issues* and achieve *some* of the benefits sought by the litigation.  *See, e.g., Loomis,* 74 Fed. Cl. at 353 (stating that a party must succeed "on any significant *issue* which achieves *some of the benefits* sought by the suit.") (emphasis added).  Here, Precision brought suit with the goal of precluding the Government from collecting the "estimated" damages it had assessed under its contracts.  *See, e.g.*, Compl. ¶¶ 3, 28, 36, 43, 51, 58, 65, 72, 86, 91, 96, 102.  By obtaining a court order requiring the Government to recalculate, and thus significantly reducing, those damages, Precision clearly obtained a significant benefit that it sought in the litigation.  Although defendant argues that Precision offered no case supporting an award of fees in the absence of a consent decree or enforceable judgment against the United States, Def.'s Response at 3, Precision has in fact supplied such authority.  In *Application Under Equal Access to Justice Act of JR & Associates*, ASBCA No. 41377, 92-3 BCA ¶ 25,121 (1992), the Armed Services Board of Contract Appeals upheld the Government's default termination, but found that the defaulted contractor was entitled to recover attorneys' fees when it had significantly reduced the Government's claims for reprocurement costs as a result of the litigation.

Moreover, the EAJA is explicitly aimed at encouraging resistance to unreasonable Government action by mitigating the expenses involved and thereby to some degree leveling the playing field; it should therefore include awards of fees to a plaintiff resisting an unreasonable Government counterclaim.  H.R. Rep. No. 96-1418, at 5 (1980) (Congressional purpose in enacting EAJA was to prevent individuals and small businesses from failing to "defend[] against unreasonable governmental action because of the expense involved in securing the vindication of their rights").

The EAJA's legislative history repeatedly expresses a broad understanding of the term "prevailing."  *See* S. Rep. No. 96-253, at 7 (1979) ("[T]he phrase 'prevailing party' should not be limited to a victor only after entry of a final judgment following a full trial on the merits. A party may be deemed prevailing if he obtains a favorable settlement of his case, if the plaintiff has sought a voluntary dismissal of a groundless complaint, or even if  he does not ultimately prevail on all issues. . . .  A fee award may . . . be appropriate where the party has prevailed on an interim order which was central to the case, or where an interlocutory appeal is sufficiently significant and discrete to be treated as a separate unit.") (internal citations and quotations omitted); H.R. Rep. No. 96-1418, at 11 (1980) (same); H.R. Rep. No. 96-1005, pt. 1, at 6 (1980) ("[I]n addition to those private parties who prevail on all issues in litigation or by final

APP021

administrative order, a party also should be eligible for recovery if he obtains a favorable settlement, a voluntary dismissal, or where he may be deemed to have prevailed due to a decision in his favor or prevailed on less than all the issues or if the amount of the judgment against his [sic] was only a fraction of the amount the Government sought.").

The determining factor is not "the degree of success," but instead "whether there has been an alteration to the legal relationship between the parties." *Filtration Dev. Co., LLC v. United States*, 63 Fed. Cl. 612, 618 (2005). While judgments on the merits and court-ordered consent decrees are two means by which a court might alter the parties' legal relationship, they are not exclusive. *Rice Servs. v. United States*, 405 F.3d 1017, 1026 (Fed. Cir. 2005) (prevailing party status "requires a plaintiff to have obtained a court order carrying sufficient 'judicial imprimatur' to materially change the legal relationship of the parties. Enforceable judgments on the merits and court-ordered consent decrees clearly meet this threshold. The threshold can also be met by other court action 'equivalent' to a judgment on the merits or a court-ordered consent decree."). That is, the plaintiff must show "the settling of some dispute which affects the behavior of the defendant towards the plaintiff." *Hewitt v. Helms*, 482 U.S. 744, 761 (1987).

This Court compelled the Forest Service, against its preference, to recalculate the amount due in accordance with the contract language, and then required it to cease pursuing its preferred calculation of penalties and interest and again recalculate the bills per the Court's instruction. These orders possessed the requisite judicial imprimatur and altered the legal relationship between the parties. *Gautreaux v. Chicago Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007) ("The [plaintiffs] achieved substantial results, embodied in court orders, and that is enough."); *New England Reg'l Council of Carpenters v. Kinton*, 284 F.3d 9, 30 (1st Cir. 2002) ("Clearly, the district court is in the best position to determine whether its statements . . . should be considered as the functional equivalent of a judicial order within the meaning of *Buckhannon*."). Indeed, as a percentage of what it sought (ultimately, the reduction of the Government bills to $0), Precision, in obtaining a reduction of approximately 58%, was more successful than the plaintiff in *Neal*, which obtained only 11.5% of the relief it requested. 121 F.3d at 685.

In *Farrar v. Hobby*, 506 U.S. 103 (1992), the Court upheld prevailing party status for a plaintiff who received only nominal damages because "A judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." This case, where the Government seeks to obtain money, is simply the inverse: the judgment has modified the Government's behavior by forcing it to demand less money than it otherwise would have.

To support its assertion that an applicant must secure a judgment in its favor on at least one claim in the complaint to qualify as a prevailing party, defendant cites *Rice Services v. United States*. Def.'s Response at 2. The Federal Circuit in *Rice Services* stated that in order to qualify as a prevailing party, an applicant "must show that it obtained an enforceable judgment on the merits or a court-ordered consent decree that materially altered the legal relationship between the parties, or the equivalent of either of those." 405 F.3d at 1025. In *Rice*, an offeror

7

brought a bid protest action against the Government, seeking a reevaluation of bids. Before the court could consider the merits of the protest, the Government took corrective action and the court dismissed the lawsuit as moot. The protester subsequently applied for attorneys' fees, arguing that it was a prevailing party because the court order dismissing the case as moot materially altered the legal relationship of the parties. The Federal Circuit rejected that argument, finding that the dismissal order "was not an enforceable judgment on the merits because the court did not reach the merits." *Id*. at 1026. That is, "the court entered its order because the government had voluntarily abandoned its position. The court did not state that it was entering the order as a merits adjudication in the face of a continuing controversy. Therefore, even if the order changed the legal relationship of the parties, the change was not material." *Id*. at 1027.

*Rice Services* is properly understood as standing for the proposition that a court must actually decide the merits of a claim in order to provide the requisite judicial imprimatur. *Id*. Here, in contrast to *Rice Services*, the Court *did* reach the merits in the face of continuing controversy, and its final judgment, although nominally in favor of defendant, embodied the Court's resolution of significant issues in plaintiff's favor.[6] The Court's rulings substantially reduced the damages ultimately obtained by defendant, and the judgment fixed plaintiff's obligation to defendant at the reduced amounts determined by the Court. As noted earlier, the Government appealed the Court's judgment to the Federal Circuit, an action that would have been unlikely if plaintiff had not prevailed at the trial level.

Defendant also argues that Precision is not a prevailing party because the significant issues on which it was successful were not expressed with sufficient specificity in the plaintiff's complaint and because plaintiff failed to obtain the relief requested in its complaint. Def.'s Response at 3-4 ("The plaintiff must, however, secure a judgment on at least *one claim in the complaint* to qualify as the prevailing party;" and "[Precision] failed to obtain the *relief requested* in its complaint.") (emphasis added). Defendant, however, reads plaintiff's complaint too narrowly. In its complaint, plaintiff challenged the contracting officers' final decisions seeking default damages on the contracts and requested that the Court overturn those decisions. Precision correctly argues that had it not brought suit challenging those decisions, its liability to pay the full amounts sought by the Forest Service would have become final and unappealable. Pl's EAJA Mot. at 4-6. While plaintiff did not detail in its complaint all of the specific issues it had with defendant's method of calculating damages, the timing of the accrual of interest and penalties, and the propriety of assessing penalties on the U-Bar contract, those issues were fully argued in the parties' briefs on cross-motions for summary judgment. Issues related to the

---

[6] *See Precision Pine*, 62 Fed. Cl. at 656 ("The Court GRANTS plaintiff's motion for summary judgment regarding the calculation of damages insofar as the Court holds that the contracting officers' computations of damages are inconsistent with the parties' contracts. . . ."); *see also Precision Pine*, 75 Fed. Cl. at 83, 88-90, 97-98 (ruling in favor of Precision Pine on the timing of accrual of interest and penalties and holding that the Forest Service could not collect a penalty charge on the U-Bar contract during the pendency of court proceedings).

APP023

calculation of damages were subsumed within Precision's challenge to the contracting officers' final decisions, which were the bases for Precision's complaint.

In sum, the Court concludes that Precision was a prevailing party with respect to three significant issues: the proper methodology for calculating damages under the contract, the date upon which interest and penalties began to accrue, and whether penalty charges were properly imposed on the U-Bar contract. Precision achieved substantial benefits from the litigation as a result of prevailing on those issues.

## II.    Whether the Government's Position Was "Substantially Justified"

The Government's position is "substantially justified" if it is "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Court "examines the entirety of the Government's conduct and makes a single finding as to whether the Government's position was substantially justified." *Manno v. United States*, 48 Fed. Cl. 587, 590 (2001). The burden rests on the Government to establish that its position was substantially justified. *Scarborough v. Principi*, 541 U.S. 401, 414 (2004). The Government must demonstrate that "it was *clearly* reasonable in asserting its position, including its position at the agency level, in view of the law and the facts." *Doty v. United States*, 71 F.3d 384, 386 (Fed. Cir. 1995) (emphasis in original).

Defendant, in arguing that its position was substantially justified, focuses on the issues upon which the Government prevailed, rather than the issues upon which plaintiff prevailed, stating that "the Court found that Precision had in fact breached its contracts, rejected Precision Pine's contention that the Forest Service's default terminations were invalid, entered judgment in favor of the United States, and awarded the United States over three-quarters of the damages sought in its counterclaim." Def.'s Response at 6-7 ("Precision Pine would have the Court focus on three discreet [sic] arguments made in opposition to the Government's counterclaim."). Defendant asserts more generally that "the United States presented substantial arguments—many of which were accepted by the Court—that had a reasonable basis in law and fact." Def.'s Response at 7. The proper inquiry, however, is whether the "government's overall position" is substantially justified, "examin[ing] not only the government's success or failure, but also the reasonableness of its position in defending against the suit." *CEMS, Inc. v. United States*, 65 Fed. Cl. 473, 479 (2005). When the Government takes some positions without substantial justification, the question then becomes whether those positions were "sufficiently dramatic in impact" to allow an award of fees. *Loomis v. United States*, 74 Fed. Cl. 350, 355 (2006).

### A.    The Government's Position With Respect to the Methodology for Calculating Damages

In its cross-motion for summary judgment, Precision contended that "the Forest Service ignored the relevant contractual provision and created a new method of calculating damages." *Precision Pine*, 62 Fed. Cl. at 653. The Government defended the contracting officers'

9

calculation of "estimated" damages, arguing that "the damages were calculated in accordance with the relevant provision of the contract." *Id.*

In analyzing the issue, the Court first looked at the plain meaning of the relevant contract language and found that the contract clearly set forth the appropriate manner of calculating damages. "[S]ection CT9.4 provides two alternative methods for determining damages in the event of breach: one where timber has been resold; and the other where timber has not been resold." *Id.* Further, the Court stated that "[a] reasonable, intelligent person, acquainted with the contemporaneous circumstances, would likely understand CT9.4 to provide the Forest Service with *only* the two options described above for ascertaining the amount of damages due after a termination for breach," and therefore the contract did *not* allow for utilization of the contracting officers' method, *i.e.*, "estimat[ing] the proceeds and costs of possible future resale and utiliz[ing] those estimated proceeds and costs as the basis for calculating something called 'estimated damages.'" *Id*. at 655 (emphasis added).

The Court concludes that the Government's position with respect to the methodology for calculating damages was not substantially justified. The Government's reading of the contract language was contrary to its plain meaning, and therefore not "justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 565.

### B.    The Government's Position With Respect to Timing of Accrual of Interest and Penalty Charges

Defendant unsuccessfully argued that the Forest Service could collect interest and penalties accruing from the date of its estimated damage bills issued between February and April 2001, despite the fact that the Court concluded on summary judgment that the Government had improperly calculated damages and was therefore not entitled to collect the amounts demanded by the bills. *Precision Pine*, 75 Fed. Cl. at 88.

In its cross-motion for summary judgment, defendant "focuse[d] on the language in CT4.41 providing that interest and penalty charges accrue from the dates on the 'initial' bills for collection." *Id*. However, the Court noted that when read in full, CT4.41 provided that "[s]uch charges may be, but are not limited to . . . damages pursuant to CT9.4." Because the Court concluded that the Government, in issuing its bills of collection, failed to calculate damages in accordance with CT9.4, *see* Section II.A., *supra*, the Court stated that to accept the Government's position would be to "read the phrase 'pursuant to CT9.4' out of the contract." *Precision Pine*, 75 Fed. Cl. at 89. The Court thus found that the Government's interpretation failed to give "reasonable meaning to all parts" of the contract. *Id*. In addition to conflicting with the plain meaning of the contract language, the Court found that the Government's interpretation, if adopted, would have the strange and unintended consequence of giving the Forest Service an incentive to issue invalid, pre-sale bills in order to obtain pre-sale interest. *Id*.

10

In its response in opposition to plaintiff's application for attorneys' fees, defendant defended the reasonableness of its position by stating that this Court "had previously ruled that [the contracting officers'] final decisions were valid Government claims from a jurisdictional standpoint," and that because they were sufficient to establish jurisdiction, it was not unreasonable of the Government to use them "as the starting point for the accrual of interest under the Debt Collection Act." Def.'s Response at 8. However, the fact that the final decisions provided a jurisdictional basis for the Government's claims does not speak to their effect in terms of the timing of the accrual of interest and penalties. While defendant argues that "Precision Pine points to no authority—other than this Court's subsequent decision—establishing that the Government's position lacked a rational basis," Def.'s Response at 8, defendant itself has provided no authority for its position, a position that runs counter to the plain language of the contract. Because the Government's position is based on an unreasonable reading of the contract and is not supported by other authority, the Court concludes that defendant has not met its burden of demonstrating that its position with respect to the timing of accrual of interest and penalties was substantially justified.

### C.   The Government's Position With Respect to Penalties Under the U-Bar Contract

With respect to the U-Bar contract, the Government argued that it had statutory authority under the Debt Collection Act to collect a six-percent penalty charge, and also that contract provision CT4.4 permitted the Forest Service to collect a six-percent penalty charge. *Precision Pine*, 75 Fed. Cl. at 97. Contract provision CT4.4, however, provided that all remedies were to be suspended "except for accrual of interest" during pendency of a Contract Disputes Act claim. The Government therefore argued that the Court should treat the six-percent penalty charge as "penalty interest," not subject to the suspension-of-remedies provision.

While the Court concluded this position was based on an incorrect reading of the contract term at issue, defendant argues—along the same lines as its argument with respect to the timing of the accrual of interest and penalties—that "no authority existed construing the language at issue and the United States presented a colorable interpretation that the Court ultimately declined to adopt." Def.'s Response at 8. Plaintiff, on the other hand, argues that the Government "ignores this Court's ruling that the [G]overnment's proffered interpretation of the contract language was not just incorrect, but was so tortured in light of the contract language that it was, in fact, unreasonable." Pl.'s Reply at 22. Specifically, the Court found that "[a] contract should be read as a whole giving 'reasonable meaning to all parts' of a contract. Here, the contract specifically distinguishes between 'interest' and 'penalty charges' and only exempts 'interest' from the general suspension of remedies." *Precision Pine*, 75 Fed. Cl. at 97 (internal citations omitted).

Consistent with its analysis of the Government's position with respect to the other contract provisions discussed above, the Court concludes that the Government's position with respect to the propriety of the imposition of penalties under the U-Bar contract was not

11

substantially justified.  The Government's position was based on an unreasonable reading of the contract, and the Government has offered no authority in support of its position.

Examining the arguments advanced by the Government, and "balancing the government's various positions against the entire civil litigation," *CEMS*, 65 Fed. Cl. at 478, the Court concludes that an award of fees is justified.  Not only did defendant proffer unreasonable arguments that prolonged the litigation, it continued to make those arguments in the face of judicial incredulity.  *See* Pl's Reply at 20 n.15 (quoting from the oral argument on the Government's appeal to the United States Court of Appeals for the Federal Circuit).  The impact of the Government's unreasonable positions was "sufficiently dramatic" to allow an award of fees.  *Loomis*, 74 Fed. Cl. at 355.

## III.    Attorneys' Fees and Expenses

### A.    Amount of Fees and Expenses Sought

Plaintiff initially requested $220,108.64 in fees and expenses.  That amount included a cost of living adjusted increase ("COLA") in the statutory cap on attorneys' fees.  Defendant has not opposed the COLA, and the Court concludes that such an increase is appropriate.  *See Carmichael v. United States*, 70 Fed. Cl. 81, 85 (2006).  Between filing its initial application and its reply brief, plaintiff updated its itemized fees and expenses, as detailed below.  Pl.'s Reply at 32.

First, in its response to the EAJA application, defendant opposed some of the itemized fees because it asserted that "Precision Pine [sought] payment of attorney fees for time spent (i) working on administrative matters with the Forest Service contracting officers, (ii) researching possible legal action against a defendant other than the United States, (iii) preparing letters to Precision Pine's Congressional representatives, and (iv) working on a dispute about a contract not referenced in the complaint in this action."  Def.'s Response at 9.  Defendant argued that elimination of time devoted to these tasks would result in a reduction of 97.9 hours and would reduce plaintiff's claim for fees by $15,157.86 at EAJA rates.  *Id.* at 10 & exh. 1; Pl.'s Reply Ex. A at 11.  In response, Precision reviewed its itemized statements of work performed and concluded that a reduction of 55.6 hours, totaling $8,608.55 at EAJA rates, would remove fees plaintiff conceded were not properly recoverable.  Pl.'s Reply at 23 & exh. A.  The Court has reviewed plaintiff's descriptions of the work done and the time devoted to the work in question and has concluded that plaintiff's reductions are reasonable and fairly address defendant's legitimate concerns.

Second, plaintiff's EAJA application and defendant's response were filed prior to the Supreme Court's ruling in *Richlin Security Service Co. v. Chertoff*, 128 S. Ct. 2007 (2008), which overruled the Federal Circuit's decision in *Richlin Security Service Co. v. Chertoff*, 472 F.3d 1370 (Fed. Cir. 2006), and held that under the EAJA Richlin was entitled to recover fees for paralegal services at the market rate it paid for such services.  In accordance with that decision,

APP027

"Precision Pine has moved the 15.3 hours charged for its summer associates and paralegals, all of whom were billed out at rates well below the EAJA cap, from expenses and included them in Exhibit B containing attorneys' fees at the hourly rate of $94.15." Pl.'s Reply at 31. The Court concludes that plaintiff has properly treated fees attributable to the work of summer associates and paralegals as recoverable at the hourly rates at which those services were billed to Precision.

These and other adjustments resulted in plaintiff's revised request for $245,923.07 in fees and expenses. *Id.* at 32; *supra* n.1.

### B.    Accounting for Precision Pine's Partial Success

In some situations, "the hours spent on [an] unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Hubbard v. United States*, 80 Fed. Cl. 282, 284 (2008). However, such an apportionment is not mandatory. *See, e.g.*, *Naekel v. DOT*, 884 F.2d 1378, 1379 (Fed. Cir. 1989) ("We do not consider this an appropriate case for fractional division of the attorney fee award."); *see also Loomis v. United States*, 74 Fed. Cl. 350, 359 (2006) ("We see no reason to reduce the fees merely because plaintiff did not prevail on all the issues he raised.").

Defendant argues that "[h]aving lost as to the liability half of this action, and having failed with respect to most issues in the damages half of this action, if any payment is ordered on Precision Pine's EAJA application, the Court should reduce the fee award in this action by no less than 80 percent." Def.'s Response at 12. Defendant asserts that its allegation that the Government "recovered over 75 percent of the damages sought in its counterclaim" provides "further supports [sic] for a reduction on the order of 80 percent of any fee award." *Id.* at 12, n.6.

Plaintiff, on the other hand, asserts that no reduction is appropriate, both because "many of the positions advanced by Precision were, of necessity, off-shoots of responding to the unreasonable positions of the defendant," and because "this case may have been avoided either entirely or at least in large measure absent the government's persistently unreasonable and obstinate behavior." Pl.'s Reply at 25. Plaintiff goes on to state:

> That is, the government twice issued and then vigorously defended contracting officers' final decisions including an appeal to the Federal Circuit based on contract interpretations which charitably could be called 'strained' and which resulted in hugely inflated damage claims. Regardless of Precision Pine's liability for default, the government claimed hundreds of thousands of dollars to which it had no entitlement whatsoever and which Precision Pine had precious little choice but to contest.

*Id.* at 25-26.

13

APP028

Precision proffers that if the Court were to conclude that some reduction were appropriate, a reduction of ten percent would be reasonable. *Id.* at 28. "When calculating an award based on only limited success, there is no precise rule or formula for making such a determination. The court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for limited success." *KMS Fusion, Inc. v. United States*, 39 Fed. Cl. 593, 602 (1997). The Government suggests a reduction of 80 percent based, in large part, on the Government's claimed 75 percent recovery. However, the Government's assertion that it recovered 75 percent of the amount it sought is not accurate.[7] Plaintiff's suggestion of a ten percent reduction (assuming the Court concludes that some reduction is warranted), is apparently based on what Precision characterizes as the Government's "strained" interpretation of the contracts and the Government's "persistently unreasonable and obstinate behavior." Pl.'s Reply at 25-26.

The Government sought to recover a total of $1,028,550.47 in this action: first, the $767,625.72 requested in its original counterclaim,[8] and second, the $260,924.75 in penalties and interest the Court concluded were improperly assessed.[9] Ultimately, the Government recovered

---

[7] Defendant states: "[t]he Government's counterclaim sought approximately $767,000. Of that sum, Precision Pine paid $149,000 during the course of litigation and the Court entered judgment for an additional $428,000." Def's Response at 6. The calculation of the amount "recovered" therefore adds the $149,000 to the judgment amount for a total of $577,000 and divides $577,000 by $767,000 as if $767,000 were the total amount the Government pursued, resulting in its claim to have received 75 percent of its requested relief. Def.'s Response at 6. There are two significant problems with this analysis. First, the $149,000 payment appears to relate to the Government's initial claim for $148,845.38 in damages relating to the O.D. Ridge contract. However, plaintiff had fully paid that amount prior to the filing of the complaint in this lawsuit. Plaintiff's Response to Defendant's Motion for Summary Judgment on Liability, Docket No. 39, at 15-16. Thus, defendant improperly included that amount in its initial counterclaim and, prompted by this litigation, eliminated it from the lawsuit only after the Court remanded the case to the Forest Service. Pl's Reply at 4-5. The Government's assertion that it "recovered" this amount in the litigation is therefore disingenuous. Second, the Government's method of calculating plaintiff's success also completely disregards the $260,924.75 in interest and penalties that it sought in addition to the $767,000 and that the Court ultimately found were improperly assessed.

[8] *See* Defendant's Answer, Affirmative Defenses, and Counterclaim (April 19, 2002, docket entry 8). This amount is based on the contracting officers' methodology for calculating damages, a methodology the Court determined was not consistent with the contract terms.

[9] *See* Defendant's Summary Regarding Final Damage Calculations (September 16, 2005, docket entry 63-3). The Government's reduced request for damages was calculated using the proper methodology, but also included $260,924.75 in interest and penalty charges (adding the total of the "accrued simple interest" column with the total of the "penalty" column) accruing

14

$427,994.20.[10]  Precision's efforts therefore, resulted in a reduction of the Government's claim of $600,556.27.  That is, Precision successfully obtained a reduction in the damages sought of 58 percent.[11]  In light of those results, the Court concludes that it would be fair and reasonable to award Precision 58 percent of the fees and expenses it incurred.  The resulting amount of recoverable attorneys' fees and expenses is therefore 58 percent of $245,923.07, or $142,635.38.

## Conclusion

Precision's application for attorneys' fees and expenses pursuant to the EAJA, 28 U.S.C. § 2412(d)(1)(A), is GRANTED in part and DENIED in part.  The Clerk of the Court is directed to enter judgment in favor of plaintiff in the amount of $142,635.38.


**IT IS SO ORDERED.**


 s/ George W. Miller

GEORGE W. MILLER

Judge

---

from early 2001, when the Government rendered its improper initial bills using an "estimated damages" methodology.

[10] *See* Second Amended Judgment (Jan. 1, 2007, docket entry 107).

[11]  The Court has noted that the Government's final damages calculations included penalties and interest through June 30, 2005, and that the Second Amended Judgment awards the Government penalties and interest accruing from April 28, 2005.  Thus, there is a "stub period" of approximately 63 days for which the Government is entitled to collect penalties and interest pursuant to the terms of the Second Amended Judgment.  However, when this amount is calculated and subtracted from the reduction achieved by plaintiff, the percentage reduction remains at 58 percent.

APP030